Dorothy UPHAM, Plaintiff,

v.

Robert W. DILL, Collector of Customs, Defendant.

United States District Court
S. D. New York.
June 27, 1961.

Ephraim London & Melvin Wulf, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty., New York City (Robert J. Ward, Anthony H. Atlas, New York City; of counsel), for defendant.

THOMAS F. MURPHY, District Judge.

Plaintiff seeks a preliminary injunction restraining the Collector of Customs from interfering with her importation of a copy of a book entitled, "Tropic of Cancer," by Henry Miller. The government cross-moves for summary judgment dismissing the complaint. On oral argument plaintiff also asked for summary judgment, i. e., for a permanent injunction and declaratory judgment. This case is not yet at issue.

Plaintiff would have us resolve what she feels are the only two issues presented, viz., Is the book obscene? Is Section 305 of the Tariff Act of 1930, 19 U.S.C.A. § 1305, unconstitutional? However, the government's motion to dismiss raises a preliminary and important question of jurisdictional procedure, resolution of which in its favor will leave those questions for another forum.

Preliminarily, therefore, a statement of the chronology of events leading to the seizure of the book and the commencement of this lawsuit is necessary in order to properly focus the thrust of

the government's motion to dismiss the complaint.

On July 7, 1960, plaintiff wrote to the defendant from Greece advising him that she had recently purchased "Tropic of Cancer" by Henry Miller, among other books, and asked for a clearance to bring them into the United States for "her own enjoyment" upon her return in September, 1960. At the same time she sent a copy of her letter to the American Civil Liberties Union. On July 13, 1960, the legal director of the American Civil Liberties Union wrote the defendant advising that he had received a copy of plaintiff's letter of July 7th and he repeated her request for clearance of the books. On August 30, 1960, defendant wrote plaintiff and advised her that she would not be permitted to import the book in issue for the reason that such importation would be in violation of Section 305 of the Tariff Act of 1930, and if imported would be seized. Upon plaintiff's arrival at New York International Airport (which is in the Eastern District of New York) on October 29, 1960, the book "Tropic of Cancer," among other books, was seized from her by a Customs Agent as in violation of Section 305. Thereafter, on November 10, 1960, the American Civil Liberties Union by its assistant legal director, acting on behalf of plaintiff, demanded the release of the book to her or, in the alternative, that libel proceedings be promptly instituted pursuant to the terms of Section 305.

On April 7, 1961, the matter was referred by defendant to the United States Attorney for the Eastern District of New York for the purpose of commencing forfeiture proceedings pursuant to Section 305. On the same date plaintiff's attorneys and the American Civil Liberties Union were advised of such referral. On April 24, 1961, plaintiff commenced the instant suit in this court against the Collector of Customs by filing a complaint seeking, among other things, an injunction restraining him from interfering with her importation of the book and a declaration that Section 305 was unconstitutional. On April 28, 1961, plaintiff served her present motion for a preliminary injunction. On the same day the United States Attorney for the Eastern District of New York filed a libel in that district against the book seized from plaintiff. In such proceeding, and on May 1, 1961, the book was formally attached by the United States Marshal for the Eastern District of New York.

It is with this background that defendant moves for summary judgment dismissing the complaint on the ground that where a statutory remedy is available, viz., the libel pending in the Eastern District of New York, wherein plaintiff can secure complete relief, viz., the return of her book, this court should not grant the extraordinary remedy of injunctive relief. Besides, it argues that the collector, if he were ordered to return the book to plaintiff, could not do so for he is no longer in possession of it as it is being held under process issued by the United States District Court for the Eastern District of New York.

Plaintiff argues that the libel proceeding in the Eastern District will be unduly protracted and points out without contradiction from the government that a libel against another copy of the same edition of the same book was begun in the Eastern District on September 24, 1959, and today remains undetermined. Accordingly, says plaintiff, this court should not deny equitable relief because of the existence of a legal remedy unless such legal remedy is co-extensive with that afforded by equity. She points out also that she is asking for a declaratory judgment that the act of the defendant was unlawful and unconstitutional, and that the existence of the other proceeding, viz., the libel in the Eastern District, may not be the basis for refusing a declaration. Cf. Rule 57 of Federal Rules of Civil Procedure, 28 U. S.C.A.

A libel proceeding is the vehicle that has been used for many years in every

reported case to test the importability of books alleged to be obscene and is the procedure authorized by Congress after a seizure,[1] and in this case was the procedure specifically demanded by the American Civil Liberties Union acting on behalf of the plaintiff.

■ Our conclusions, explained hereafter, are that plaintiff has a remedy at law provided specially by Congress which is her exclusive remedy, and in any event is an entirely adequate one and consequently, there is no basis to invoke equity jurisdiction. We conclude also that her right to a declaration as to the constitutionality of the statute she attacks arises only incident to her claim for return of the book; divorced from that claim as the circumstances show, her suit for a declaratory judgment is deficient for lack of a justiciable controversy. She must assert her claim for return of the book in the district wherein the seizure was made, here, the Eastern District of New York.

It is the allegations in plaintiff's complaint, and the relief sought, against the Collector of Customs that forms the basis of this court's jurisdiction, if there is any jurisdiction in the matter. If the complaint is to be construed as seeking a prohibitory injunction, as the artful wording adopted by plaintiff would indicate, i. e., to restrain the collector from preventing importation of the particular copy of the book, we are met with the fact that he has already done so and that the book itself is in the possession of the United States Marshal for the Eastern District of New York, pursuant to that court's order, and thus without defendant's power to reclaim it. Such facts demonstrate the unavailability of prohibitory injunctive relief for such an injunction would be in vain.

Despite the wording of the complaint plaintiff obviously seeks, in effect, the return of her book. She does not contemplate or suggest that she is concerned with the importation of any other book but the copy now held by the United States Marshal in the Eastern District of New York. To restrain the collector from preventing her importation of a book that he has already prevented her from importing, sensibly can only mean, though not phrased in mandatory terms, to require him to return the book to plaintiff. For that equitable relief plaintiff has not shown the hornbook prerequisite, viz., that she is suffering irreparable harm or that she has no adequate legal remedy. She is being deprived merely of a copy of a book, copies of which are readily available at the present time in many book and drug stores throughout the City of New York. According to the reviews in the New York Times, New York Herald Tribune, Time Magazine and other publications, the list price is $7.50.

No matter what it is labeled, in essence plaintiff's action is one to require defendant to return property seized under color of a revenue law and as such runs afoul of 28 U.S.C. § 2463, which provides that, "All property taken or detained under any revenue law of the United States shall not be repleviable, but shall be deemed to be in the custody of the law and subject only to the

1. Section 305 reads in part as follows: "Upon the seizure of such book or matter the collector shall transmit information thereof to the district attorney of the district in which is situated the office at which such seizure has taken place, who shall institute proceedings in the district court for the forfeiture, confiscation, and destruction of the book or matter seized. Upon the adjudication that such book or matter thus seized is of the character the entry of which is by this section prohibited, it shall be ordered de- stroyed and shall be destroyed. Upon adjudication that such book or matter thus seized is not of the character the entry of which is by this section prohibited, it shall not be excluded from entry under the provisions of this section.

"In any such proceeding any party in interest may upon demand have the facts at issue determined by a jury and any party may have an appeal or the right of review as in the case of ordinary actions or suits."

orders and decrees of the courts of the United States having jurisdiction thereof."

The court "having jurisdiction thereof" is the court which has jurisdiction of the proceedings for condemnation of the book and that is in the district where it was seized. Cf. In re Behrens, 2 Cir., 1930, 39 F.2d 561, 563. In this instance it is the United States District Court for the Eastern District of New York, and the *res,* the copy of the book, is now subject to the orders and decrees of that court. Plaintiff's proper course was to petition the court in the Eastern District to require the government to institute proceedings promptly to condemn the book or to abandon the seizure and release it to plaintiff. Truth Seeker Co., Inc. v. Durning, 2 Cir., 1945, 147 F.2d 54, 56. The procedure provided by Congress in the Tariff Act of 1930 for testing the legality of seizures made under that Act, in our opinion, is exclusive of other remedies, and if there be inordinate delay on the part of the government in proceeding with the condemnation of the seized property, the court in which those proceedings would be brought may, on the petition of the owner of the property, order its return in default of prompt institution of a condemnation suit thereafter. Cf. In re No. 32 East Sixty-Seventh Street, 2 Cir., 1938, 96 F.2d 153, 156; Goldman v. American Dealers Service, 2 Cir., 1943, 135 F.2d 398, 401, 402. The question of whether the government unreasonably delayed such proceedings was one that should have been presented to the court in the Eastern District; we need not pass upon it.

In her complaint plaintiff also prays:

"(a) for a judgment of this Court declaring that the action of the Defendant in seizing Plaintiff's copy of the book 'Tropic of Cancer' pursuant to the authority allegedly conferred under Title 19 of the United States Code was unlawful and unconstitutional;

"(b) for a judgment of this Court declaring that Section 1305 of Title 19 of the United States Code on its face and as interpreted by the Defendant provides for a system of prior restraint upon the press in violation of the constitutional guarantees of freedom of the press, and countenances the deprivation of property without due process of law."

While she has set out her contentions of unconstitutionality in the form of a declaratory judgment action, actually the constitutional issue arises only incident to her suit for injunction which, for the reasons stated above, we have determined cannot be maintained by her. Plaintiff has no standing to attack this legislation on constitutional grounds except insofar as she has been directly affected by it. It would seem that she may raise that constitutional issue properly, if at all, only in a suit to enforce her alleged legal right for the return of the book, deprivation of which is the sole direct injury caused her by this statute. Her direct injury is a *fait accompli.*

Plaintiff is concerned merely with the importation of the only copy of the book seized by defendant; she intimates no other or future attempts to import copies of this book and, therefore, there is no threat presented of further direct injury to her under color of the statute she attacks. In short, there is no justiciable controversy except with respect to the return of the seized copy of this book, and it is incident to the resolution of that controversy alone that the constitutional issue arises. Plaintiff is entitled, if at all, to raise that issue in a proceeding that will test the legality of the seizure and the destruction or return of the book. That proceeding, as we have seen, must be conducted in the Eastern District, which court alone has jurisdiction in the matter. Under the circumstances of the case she is not entitled to a declaration of the constitutionality of the stat-

ute involved divorced from the legal right she seeks to enforce, to wit, the return of her book. Were we to construe her complaint as one for a declaratory judgment not incident to the enforcement of her claimed right to the return of her book, or incident to her suit for injunction if you will, we would have to conclude that it did not involve a justiciable controversy and, therefore, dismiss it. Moreover, there are abundant reasons why this court would be moved, in the exercise of its discretion, to decline declaratory relief; to hold that such relief is inappropriate in this case. Cf. Rule 57, F.R.Civ.P. One reason is that we cannot finally settle the controversy that exists here; the absence of grounds for equitable intervention aside, we lack the coercive power to order the return of the plaintiff's book.

Another reason is that there is no substantial interest of plaintiff in the declaration of unconstitutionality sought. Her claimed right to import a particular copy of a book that is available all over town may be effectively and appropriately litigated in the manner specifically provided by Congress, in the libel suit in the Eastern District. The existence of that special statutory remedy is an important factor in the exercise of our discretion. See Borchard, Declaratory Judgments, pp. 342–346. And further considering the insubstantiality of plaintiff's interest herein involved, we find, on weighing it against the consequences of granting the declaratory relief prayed for, that the balance lies clearly with the public interest underlying this statute. Finally, consistent with the duty of federal courts to avoid unnecessary decisions of constitutional questions, it appears possible that this controversy may be disposed of on a non-constitutional ground, e. g., it might be ultimately determined that the book is not obscene. One thing is certain and that is that the facts before us do not demonstrate any necessity for this court to pass upon the constitutionality of the statute to preserve plaintiff's rights. And as to any delay in the progress of the libel suit we cannot see any possible prejudice worth mentioning to plaintiff's right to import a particular copy of the readily obtainable "Cancer."

It is important to note that plaintiff challenges the seizure by defendant on two alternative grounds. (1) Constitutionality and (2) Non-obscenity. As to the latter ground (decision upon which might avoid the necessity of decision upon the former) we have read the book and applied the test laid down by the Supreme Court in Roth v. United States, 354 U.S. 476, 479, 77 S.Ct. 1304, 1311, 1 L.Ed.2d 1498, "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest"; at least we tried impartially to apply that test, and in our opinion the book is not obscene. It is nauseating and repulsive in parts, but not obscene as per Roth. That is only our opinion, however; we cannot say so as a matter of law. Applying the Roth test we think that reasonable men might differ on the ultimate question. It presents, therefore, a fact question to be tried by the ultimate trier of the facts (judge or jury) and thus, not resolvable on motion for summary judgment. A further word on who should be the trier of the facts we deem not inappropriate. Under the statute, either party in the libel proceeding in the Eastern District is entitled to demand a jury, and in our opinion, the question of obscenity is one acutely appropriate for a jury and awkward for a single judge.

Mr. Justice Frankfurter has said, "It bears repetition that the determination of obscenity is for juror or judge not on the basis of his personal upbringing or restricted reflection or particular experience of life, but on the basis of 'contemporary community standards.' " Smith v. People of State of California, 361 U.S. 147, 165, 80 S.Ct. 215, 225, 4 L.Ed.2d 205. Recently in Grove Press,

Inc. v. Christenberry, 2 Cir., 1960, 276 F. 2d 433, the Court of Appeals held that "Lady Chatterley's Lover" by D. H. Lawrence was not obscene within the meaning of 18 U.S.C.A. § 1461. In that case Judge Moore, although he concurred with reluctance, succinctly posed one of the puzzling problems. He asked (at page 440), " * * * is a single judge or a group of judges in any one restricted geographic district all-knowing as to community standards?" He could have asked, also, is a single judge or a group of judges qualified to speak for the "average man." Both the "average man" and "contemporary community standards" are factors in the formula we are directed to apply. Individual judges should hesitate to speak for the "average man" and hesitate to define "contemporary community standards." The ideal solution to the problem, in our judgment is a jury trial. What better way can this book be tested than by the unanimous opinion of twelve jurors selected at random from a large metropolitan community. In such a way the plaintiff will not have to be relegated to the opinion of a single judge who would have difficulty determining what the "average man" would think, and what "contemporary community standards" are. It also would provide a forum for plaintiff's expert literary critics to voice their opinions and for the government to call theirs. Such procedure is the closest approach to, or approximation of the "average man." The experience and observations of twelve jurors picked at random will come closer to an appraisal and understanding of "contemporary community standards."

We fully subscribe to the views of Judge Hand set out in United States v. Levine, 2 Cir., 1936, 83 F.2d 156, 157:

"As so often happens, the problem is to find a passable compromise between opposing interests, whose relative importance, like that of all social or personal values, is incommensurable. We impose such a duty upon a jury * * * because the standard they fix is likely to be an acceptable mesne, and because in such matters a mesne most nearly satisfies the moral demands of the community. There can never be constitutive principles for such judgments, or indeed more than cautions to avoid the personal aberrations of the jurors. * * * the work must be taken as a whole, its merits weighed against its defects * * *; if it is old, its accepted place in the arts must be regarded; if new, the opinions of competent critics in published reviews or the like may be considered; what counts is its effect, not upon any particular class, but upon all those whom it is likely to reach. Thus 'obscenity' is a function of many variables, and the verdict of the jury is not the conclusion of a syllogism of which they are to find only the minor premiss, but really a small bit of legislation ad hoc, like the standard of care."

In accordance with our stated conclusions the plaintiff's motions are denied, and the government's motion granted, and the complaint is dismissed.

This is an order. No settlement is necessary.