Gerald Ronald IVERS, also known as James Ivan Thurston, Plaintiff,

v.

UNITED STATES of America et al., Defendants.

The UNITED STATES of America, Cross-Claimant,

v.

FORTY THOUSAND NINE HUNDRED NINETY–EIGHT DOLLARS EIGHTY–SIX CENTS ($40,998.86) IN UNITED STATES CURRENCY, Cross-Defendant,

Gerald Ronald Ivers, also known as James Ivan Thurston, Claimant.

No. C–75–464 SC.

United States District Court, N. D. California.

Sept. 29, 1975.

Neil Jon Bloomfield, Fairfax, Cal., for plaintiff.

James L. Browning, Jr., U. S. Atty., by Michael C. D'Amelio, Asst. U. S. Atty., San Francisco, Cal., for defendants.

## MEMORANDUM DECISION

CONTI, District Judge.

This case is presently before the court on cross-motions for summary judgment, the parties having submitted the case on the pleadings, an agreed statement of facts and other evidence presently on file.

The relevant facts in this case are primarily undisputed, although the parties argue conflicting interpretations of those facts. Plaintiff Gerald Ronald Ivers is a Canadian citizen. In 1967 and 1968, plaintiff, then known as James Ivan Thurston, was deported from the United States. On October 6, 1973, he entered this country at San Francisco International Airport on a flight from Vancouver, British Columbia. Upon processing through Customs at San Francisco, plaintiff was asked by a customs inspector whether he was carrying any currency. Ivers responded that he possessed about $1,000, which he took out of his trousers pocket and which was determined to amount, in fact, to $1,148.00 in U.S. currency. The customs inspector then asked plaintiff if he had any more money, to which plaintiff responded in the negative. Plaintiff was then searched by customs officials, who discovered an additional $39,-850.86 in U.S. currency, which had been strapped across his stomach underneath his trousers and shirt. Notwithstanding the fact that he transported a total $40,998.86 in U.S. currency into this country, plaintiff failed to report on Customs Form 4790 that he was bringing in excess of $5,000 into the United States. Plaintiff, however, contends that he was ignorant and unaware of any law or duty to declare any such cash upon his person.

On the same date, plaintiff was arrested by the Government on the basis of his failure to comply with 31 U.S.C. § 1101, which requires the reporting of the importation of currency in excess of $5,000. Simultaneous-

ly, the $40,998.86 was seized for forfeiture under claimed authority of 31 U.S.C. § 1102. Plaintiff was also arrested for violating 31 U.S.C. § 1058, which provides a criminal penalty for wilful violations of Section 1101. On February 19, 1974, plaintiff entered a plea of guilty to the criminal charge and was sentenced to six months imprisonment and fined $1,000.00. Plaintiff served said sentence from March through September, 1973.

Plaintiff brought the instant action claiming he was entitled to return of his seized currency on the ground that the Government has failed to institute forfeiture proceedings in a timely manner. Defendant has counterclaimed alleging that, on the merits, it is entitled to forfeiture of the seized currency.

The court will first consider plaintiff's contentions that defendant unnecessarily delayed instituting forfeiture proceedings, since a determination on that issue in plaintiff's favor would obviate the need to consider the merits of defendant's counterclaim.

### I. Effect of Government's Delay in Proceeding.

We are concerned here with the legal effect of the Government's alleged delay in instituting judicial forfeiture proceedings for a purported violation of 31 U.S.C. § 1101 through 1105, which constitute that segment of the Bank Secrecy Act which regulates the reporting of imports and exports of monetary instruments. Although those statutory provisions have been effective since October 1970, we have been unable to discover any published opinion which has considered the substantive and procedural requirements of those sections as they apply to a specific alleged violation. We are, therefore, faced with a number of interrelated issues of first impression bearing on the case at bar. Since a proper understanding of the reporting requirements necessitates an examination of the sections as they relate to one another, we have set forth the relevant portions of the sections in the margin.[1]

Although there is no express statutory requirement within those sections which dictates that the Government must promptly after seizure commence judicial forfeiture proceedings, plaintiff nonetheless alleges that the Constitution mandates such prompt action, and that the Government's prolonged delay in connection with the case at bar requires return of the money seized. Plaintiff's general proposition calling for prompt action by the Government finds sig-

---

1. § 1101. Reports—Persons required to file
(a) Except as provided in subsection (c) of this section, whoever, whether as principal, agent, or bailee, or by an agent or bailee, knowingly—
(1) transports or causes to be transported monetary instruments—
(A) from any place within the United States to or through any place outside the United States, or
(B) to any place within the United States from or through any place outside the United States, or
(2) receives monetary instruments at the termination of their transportation to the United States from or through any place outside the United States
in an amount exceeding $5,000 on any one occasion shall file a report or reports in accordance with subsection (b) of this section.
§ 1102. Forfeiture.
(a) Any monetary instruments which are in the process of any transportation with respect to which any report required to be filed under section 1101(a) of this title either has not been filed or contains material omissions or misstatements are subject to seizure and forfeiture to the United States.

. . . . .

§ 1103. Civil Liability.
The Secretary may assess a civil penalty upon any person who fails to file any report required under section 1101 of this title, or who files such a report containing any material omission or misstatement. The amount of the penalty shall not exceed the amount of the monetary instruments with respect to whose transportation the report was required to be filed. The liabilities imposed by this subchapter are in addition to any other liabilities, civil or criminal, except that the liability under this section shall be reduced by any amount actually forfeited under section 1102 of this title.
§ 1104. Remission of forfeiture or penalty.
The Secretary may in his discretion remit any forfeiture or penalty under this subchapter in whole or in part upon such terms and conditions as he deems reasonable and just.

nificant support from the Supreme Court as well as from other authorities.

We find the "promptness" mandate announced as early as 1931 in dicta from *Sturges v. Clark D. Pease, Inc.*, 48 F.2d 1035, 1039 (2d Cir. 1931):

> "Though the merchandise which has been unlawfully imported is subject to seizure and forfeiture . . . and has been actually seized by the customs authorities, we think that the collector may be required to assert his right to file a libel for forfeiture with promptitude."

Language of similar import has been expressed in *Upham v. Dill*, 195 F.Supp. 5, 9 (S.D.N.Y.1961); *Goldman v. American Dealers Service*, 135 F.2d 398, 401–402 (2d Cir. 1943), and *In re No. 32 East Sixty-Seventh Street*, 96 F.2d 153, 156 (2d Cir. 1938) which considered seizures for respective violations of the customs, postal and customs laws.

We find more elaborate discussion of the "promptness" mandate among a more recent group of cases cited by plaintiff. In *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971), the Supreme Court considered the timeliness requirement as it applied to photographs which were seized by customs agents as being obscene under Section 305 of the Tariff Act of 1930. (19 U.S.C. § 1305(a)). In order to avoid declaring the statute unconstitutional, the Court read into the seizure provisions certain time constraints which would require the Government to move toward a prompt judicial determination. The court reasoned that the Constitution mandated such a time requirement in order to protect against illegal censorship.

Also cited by plaintiff are *Sarkisian v. United States*, 472 F.2d 468 (10th Cir. 1973);

*United States v. A Quantity of Gold Jewelry*, 379 F.Supp. 283 (C.D.Cal.1974), and *United States v. One 1971 Opel G. T.*, 360 F.Supp. 638 (C.D.Cal.1973). In *Sarkisian*, the Government was ordered to return gold jewelry which had been seized by customs officials. That holding was based on the ground that the Government delayed some nine months between the time it completed its administrative investigation and its filing of its action for forfeiture and that such a delay was in violation of the prompt action required under the reasoning of *Thirty-Seven Photographs* and under 19 U.S.C. §§ 1602 through 1604. The *1971 Opel* court followed a similar approach in ruling that those statutes required the Collector to promptly commence court proceedings for forfeiture of a seized automobile. That court also suggested that a delay in carrying out court proceedings might also be in violation of the Constitution where the property seized is of a wasting nature such that it would become substantially worthless before there could be a judicial determination. Finally, in the *Gold Jewelry* case, the claimants had, pursuant to statute, attempted to post surety bonds in exchange for the return of the seized gold jewelry, which efforts had been rejected. Under such circumstances, the court held the fact that the Government had prolonged the institution of forfeiture proceedings violated claimants' constitutional rights and compelled the release of the seized property.

Each of the above cases relied upon by plaintiff can be distinguished from the case at bar. The *Thirty-Seven Photographs* decision was aimed at protecting unauthorized and illegal censorship,[2] not presently at issue. The thrust of *Sarkisian* and *1971 Opel*, insofar as they relied on the timeliness requirements of Sections 1602 through 1604,[3] carries little weight in the analysis of

---

2. See, *1971 Opel*, supra, at 642, n.3; compare *Sarkisian*, supra, at 472.

3. Plaintiff argues that those statutes apply to all seizure actions taken by any customs officials. However, the express language of the statutes is clearly to the contrary, with the only reference to the scope of the provisions being in terms of "violations of the custom laws".

The instant case is concerned with an alleged violation of a provision under the Money and Finance title. We must, therefore, conclude that 19 U.S.C. §§ 1602–1602, which are applicable to proceedings in conjunction with seizures and forfeitures under the customs laws, do not govern the proceedings in cases such as that at bar.

the case at bar. And the *Gold Jewelry* case can be distinguished on the basis of the fact that claimant therein had been refused the statutory opportunity to post full surety bond and that the Government continued in its delay thereafter.

■ However, even after those cases are carefully examined so as to reveal that they do not directly control the case at bar, they continue to stand for the general proposition that the Government cannot unduly and unjustifiably delay in proceeding to a final determination of which party should have proper and legal title to and possession of seized property. In that general proposition we expressly concur.

We do not, however, agree with plaintiff's argument that his pursuit of an administrative determination does not forgive the Government from proceeding forthwith to a judicial determination. Plaintiff's argument is two-pronged. First, he contends that 31 U.S.C. § 1104 does not provide for an administrative determination, and that the Department of the Treasury's attempted procedures thereunder were therefore unauthorized. Second, he claims that even if an administrative proceeding is provided for, the Government must promptly commence forfeiture proceeding in a court of competent jurisdiction, whether or not a claimant has sought administrative relief.

### A. *Effect of Section 1104.*

■ Section 1104 provides in pertinent part that the Secretary "may . . . remit any forfeiture". It is suggested that such language provides for remission only after forfeiture, and that forfeiture is not accomplished unless and until a judicial decision has been rendered in favor of the Government. From such a holding, it would follow that to the extent Section 1104 authorizes administrative action, such authorization is effective only after judicial proceedings have been concluded. How-

ever, such a line of argument rests on an interpretation of forfeiture which is too restrictive. As used in analogous customs and other seizure statutes, the term "forfeiture" applied to the status of certain property before, as well as after, a judicial decision has been rendered. Thus, plaintiff is in error when he states that it is well settled that forfeiture does not occur until there is a judicial determination of forfeiture. In fact, the case of *United States v. Stowell*, 133 U.S. 1, 16–17, 10 S.Ct. 244, 247, 33 L.Ed. 555, 559 (1890)[4] cited as authority by plaintiff, contains language expressly to the contrary:

> "By the settled doctrine of this court, whenever a statute enacts that upon the commission of a certain act specific property used in or connected with that act shall be forfeited, *the forfeiture takes effect immediately upon the commission of the act* ; the right to the property then vests in the United States, although their title is not perfected until judicial condemnation; the forfeiture constitutes a statutory transfer of the right to the United States *at the time the offense is committed . . .* " (Emphasis added)

See also *United States v. One Diamond Ring*, 2 F.2d 732, 733 (W.D.Wash.1924); 36 Am.Jur.2d Forfeitures and Penalties, § 24. The language of the *Confiscation Cases*, 7 Wall. (U.S.) 454, 461 19 L.Ed. 196, 199 (1898) is to the same effect. Therein, the Court approved a ruling "that the right of the collector to forfeiture in rem, attached on the seizure, but that the right must be defined and consummated by the Judgment or decree".

Accordingly, we must conclude that remission of forfeiture is not, as plaintiff contends, foreclosed until after a judicial decree of forfeiture. Other courts have so held. "[T]he Secretary had authority . . to remit a forfeiture, at any time before or after a final decree or judgment". *Confiscation Cases*, supra, 7 Wall. (U.S.) at 462, 19

---

4. The two other cases cited as controlling on this issue are both inapposite. Although *Caldwell v. United States*, 8 How. (U.E.) 366, 12 L.Ed. 1115 (1850), and *United States v. Grundy*, 3 Cranch (U.S.) 337, 2 L.Ed. 459 (1806) concluded that forfeiture was not effective at the time of the commission of the illegal act, that conclusion was based on the nature of the applicable statute, which made forfeiture of the property at issue merely an alternative remedy.

L.Ed. at 199. Accord, *United States v. 150 and 7/12 Dozen Long Gloves,* 168 F. 1010, 1012 (E.D.N.Y.1909), and cases cited therein.[5] See also, e. g. *United States v. One 1961 Cadillac Hardtop Automobile,* 207 F.Supp. 693 (E.D.Tenn.1962); *United States v. One 1961 Cadillac,* 337 F.2d 730 (6th Cir. 1964), wherein it is suggested that remission of forfeiture may proceed before or simultaneously with the judicial determination of final forfeiture.

Based on the above reasoning, we are of the opinion that Section 1104 does not prevent the Secretary of the Treasury from entertaining applications for remission before a final judicial decree of forfeiture is rendered, and that the administrative proceedings conducted in conjunction with the case at bar were therefore authorized and legal.

B. *Effect of Administrative Filing.*

▮ Plaintiff takes the position that even if 31 U.S.C. § 1104 is read to provide for administrative action in advance of judicial proceedings, his selection of seeking administrative relief cannot extend the time in which the Government must constitutionally commence judicial proceedings. We cannot share that stand.

It is unquestioned that administrative proceedings are generally less formal and less costly than their judicial counterparts. Thus, the administrative relief provided for under Section 1104 for remission of forfeitures is advantageous to both a claimant and the Government. That plaintiff preferred to attempt to obtain return of the seized money by administrative means, rather than through the courts is evidenced by the fact that he applied for remission rather than seeking a judicial determination, although both alternatives have been available ever since seizure. In fact, it is not unlikely that plaintiff, as well as similarly situated claimants, would have vigorously protested the added aggravation and financial burden that would have befallen

him if the Government had filed a judicial proceeding to be decided before or simultaneously with the administrative proceedings. In fact, instant plaintiff would have been additionally handicapped by such action he contends the Government was compelled to take since he was incarcerated for six months shortly after the money was seized. It does not stretch the imagination to believe that he would have voiced a strong objection to any prompt judicial filing by the Government on the ground that he was thereby prevented from adequately presenting his case.

We agree with the defendant's contention that administrative proceedings are certainly reasonable. They are particularly advisable in an area in which the Secretary of the Treasury has frequently granted the requested remission. We, therefore, conclude that the Government was excused in its filing a judicial proceeding while the administrative investigation and decision remained unresolved.

Such a conclusion is admittedly at odds with discussion of the issue in *1971 Opel* and *Gold Jewelry.* The contrary conclusion arrived at in the former case was based on an interpretation of 19 U.S.C. §§ 1602 through 1604, statutes which do not apply here. The *Gold Jewelry* holding merely adopts that expressed in *1971 Opel.* The decision to require the Government to proceed in the courts, notwithstanding a claimant's attempt to obtain administrative relief, was viewed by the *1971 Opel* court as avoiding placing a disadvantage or penalty upon a claimant for seeking the easiest, and presumably the cheapest, way to assert his claim without the need of a lawyer. *Ibid* at 640–41. The implications of that decision would place the additional burden of a judicial proceeding upon a claimant. Under the *1971 Opel* and *Gold Jewelry* decisions, a claimant would presumably suffer the handicap those courts apparently hoped to avoid since the Government would be compelled thereunder to forthwith file a judi-

---

**5.** In dictum, the court in *United States v. One 1973 Dodge Maxivan Truck,* 365 F.Supp. 833, 835 (N.D.Fla.1973) suggested the contrary, presuming that application for remission was only to be made after "forfeiture" to the Secretary.

cial complaint in order to protect its right. Such a requirement is obviously counterproductive, for the claimant as well as the Government, since such a filing would apparently have to be made before a thorough investigation might be completed and even in cases in which it would subsequently be determined that remission should be granted. In such cases, the excessive burden placed on the claimant is a penalty we cannot support.

We further note that the holdings in *1971 Opel* and *Gold Jewelry* were based on the observation that "[t]here is nothing whatever to preclude a continued processing of the administrative claim in the Treasury Department after the Government's petition is filed in district court". Supra, 360 F.Supp. at 641, and 379 F.Supp. at 287. However, under 19 C.F.R. § 171.1(a), action on any petition is to be terminated as soon as the case has been referred to the U.S. Attorney for institution of legal proceedings.[6] Thus, it would appear that the observation made by those courts is incorrect and that the institution of legal proceedings, which those decisions would compel, would, in fact, foreclose the effective use of the generally more desirable administrative relief.[7] In light of 19 C.F.R. § 171.1(a), we must view as suspect the holding of *1971 Opel* and *Gold Jewelry* that the Government must institute prompt judicial proceedings, notwithstanding a claimant's attempt to achieve a simpler and cheaper administrative mode of relief.

Following the above reasoning, we are of the opinion that the Government is not compelled under 31 U.S.C. §§ 1101 through 1105 to commence judicial proceedings so long as the Secretary is conducting prompt administrative proceedings which might result in remission of property seized under said statutes. Such a conclusion does not force a claimant to waive his right to a judicial determination, as plaintiff has suggested. There is nothing in this court's holding which prevents a claimant at any time from himself commencing legal action to determine legal right to seized property. See, e. g., *Upham*, supra, at 9; *Truth Seeker Co. v. Durning*, 147 F.2d 54, 56 (2d Cir. 1945).

Therefore the Government's delay in instituting legal proceedings to obtain a decree of forfeiture against the seized money does not in the instant case dictate that the money be returned to plaintiff.

## II. *Justification for Delay.*

 Even if we were to accept plaintiff's argument and the holdings of *1971 Opel* and *Gold Jewelry* to the effect that the Government cannot be relieved of its obligation to promptly commence legal proceedings merely because a claimant has petitioned for administrative relief, we would alternatively reach the same conclusion as that announced above based on our finding that plaintiff's conduct was such that the Government's delay is excusable and justified under the circumstances of the case at bar.

The facts justifying the Government's delay are essentially undisputed. On October 31, 1973, twenty-five days after the money was seized, the District Director of Customs wrote plaintiff and informed him that he had sixty days to petition for relief and return of the money which had been seized.[8] The letter further stated that judicial proceedings would be commenced against said property if a petition was not received within that period. On February 4, 1974, plaintiff's original attorney, Lawrence Marquette, wrote back to the District Director

---

**6.** 19 C.F.R. § 171.1(a). Case referred for institution of legal proceedings. No action shall be taken on any petition if the civil liability has been referred to the U.S. Attorney for institution of legal proceedings.

**7.** We know of no legal argument which would require the Secretary of the Treasury to continue duplicative administrative proceedings. We therefore do not question the validity of 19 C.F.R. 171.1(a).

**8.** We note that the administrative relief indicated to be available was stated to be authorized by 31 U.S.C. § 1104, rather than by 19 U.S.C. § 1618, as indicated in the letter. Such a discrepancy in the letter is not relevant to the decision of this court.

requesting an extension until April 5, 1974, to file a petition for remission. In that letter it was additionally requested "that during the pendency of this extension no forfeiture proceedings be commenced by the United States or any of its agencies". The requested extension was granted in a reply letter dated the following day.

On March 1, 1974, plaintiff submitted a Petition for Relief under claimed authority of 31 U.S.C. § 1104, at which time United States Customs commenced further investigations into the merits of the petition.

On July 15, 1974, plaintiff retained his present counsel, Neil Bloomfield, in place of Mr. Marquette, who apparently disappeared. In a letter of the same date Mr. Bloomfield advised the San Francisco Seizure and Penalty Officer of the substitution of counsel and requested a copy of the petition which had previously been filed on behalf of plaintiff. A copy was sent to Mr. Bloomfield on August 26, 1974, and on November 10, 1974, plaintiff's counsel submitted an amendment to the petition for relief. Simultaneously, counsel wrote a letter to the District Director requesting that the file be forwarded promptly to Washington, D. C. for a decision and stated that "[i]f the District Director of Customs does not remit the funds, naturally, the matter will have to be litigated". On February 11, 1975, Customs rendered its decision denying plaintiff's petition. The instant action was subsequently commenced March 21, 1975.

The Supreme Court has expressly held that the Government's delay in instituting legal proceedings for forfeiture may be excused and justified by a claimant's conduct. "No seizure or forfeiture will be invalidated for delay, however, where the claimant is responsible for extending either administrative action or judicial determination beyond the allowable time limits . . ." *Thirty-Seven Photographs,* supra, 402 U.S. at 374, 91 S.Ct. at 1407, 28 L.Ed.2d at 832. We find that the conduct of the instant plaintiff was such as to excuse and justify the

Government's delay. We must, therefore, conclude that return of the seized money is not required merely because of such delay.

### III. *Merits of Forfeiture Claim.*

 Having concluded that the Government's delay in instituting forfeiture proceedings does not necessitate return of the seized money, we must examine defendant's claim that it is entitled to a decree of forfeiture. In deciding that issue, we view out jurisdiction as limited to determining whether all of the elements of the alleged violation have been proved. Specifically, we are concerned here with whether it has been demonstrated that Ivers violated 31 U.S.C. § 1101, since § 1102 subjects any money imported in violation thereof to forfeiture. We find that all of the element of § 1101 have been proved and that the Government is entitled to forfeiture.

It is undisputed that plaintiff transported in excess of $5,000 into this country on October 6, 1973, and that he failed to make the statutorily required report. It also cannot be questioned that he knew he was carrying the seized money. However, plaintiff contends that he was unaware of the reporting requirement and that forfeiture is, therefore, precluded. We do not agree. The evidence indicates that plaintiff was repeatedly asked whether he was importing more than the approximately $1,100.00 he declared, and he consistently denied possession of any additional currency. Additionally, plaintiff pleaded guilty to a criminal violation of 31 U.S.C. § 1058 for failure to declare the monetary instruments in the amount exceeding $5,000 upon entering the United States. Even if ignorance of the law were an excuse,[9] we think that it has been clearly proved that plaintiff violated 31 U.S.C. § 1101.

Therefore, it is the order of this court that:

(1) Plaintiff's motion for summary judgment be, and hereby is, denied;

---

**9.** Remission of the forfeiture on the ground of innocence and good faith is exclusively within the discretion of the Secretary of the Treasury.

*Associates Investment Co. v. United States,* 220 F.2d 885, 888 (5th Cir. 1955).

(2) Defendant's motion for summary judgment be, and hereby is, granted; and

(3) Judgment be entered in favor of defendant and against plaintiff decreeing the seized $40,998.86 forfeited to defendant.