Gerald Ronald IVERS, a/k/a James Ivan Thurston, Plaintiff-Appellant,

v.

UNITED STATES of America et al., Defendants-Appellees.

Gerald Ronald IVERS, a/k/a James Ivan Thurston, Claimant and Plaintiff-Appellee,

v.

UNITED STATES of America, Cross-Claimant and Defendant-Appellant,

Forty Thousand Nine Hundred Ninety Eight Dollars Eighty Six Cents ($40,998.86) in U. S. Currency, Cross-Defendant.

Nos. 76–1074, 76–1075.

United States Court of Appeals, Ninth Circuit.

Sept. 18, 1978.

---

Niel Blumfield (argued), C. Clay Greene (argued), Sausalito, Cal., for Gerald Ronald Ivers.

Michael C. D'Amelio, Asst. U. S. Atty. (argued), San Francisco, Cal., for the U. S.

Before KILKENNY and GOODWIN, Circuit Judges, and PALMIERI,* District Judge.

PALMIERI, District Judge:

On October 6, 1973, appellant Gerald Ronald Ivers, a Canadian citizen who had been twice deported from the United States under the name James Ivan Thurston, entered this country at the San Francisco International Airport on a flight from Vancouver, British Columbia. At that time he was carrying a total of $40,998.86 in United States currency, which he failed to report on the requisite Customs form, as required by 31 U.S.C. § 1101.[1] These unlawful ac-

---

* The Honorable Edmund L. Palmieri, Senior United States District Judge for the Southern District of New York, sitting by designation.

1. § 1101. Reports
 Persons required to file
 (a) Except as provided in subsection (c) of this section, whoever, whether as principal, agent, or bailee, or by an agent or bailee, knowingly—
 (1) transports or causes to be transported monetary instruments—
 (A) from any place within the United States to or through any place outside the United States, or
 (B) to any place within the United States from or through any place outside the United States, or

tions subjected him to a panoply of legal procedures and penalties, both criminal and civil, including the seizure and forfeiture of his money, which underlie the present appeal.

This suit was commenced on March 11, 1975, when Ivers filed a complaint seeking the return of the funds seized from him by the Customs authorities. This relief was sought on the grounds, *inter alia*, that he was unaware of the duty to report his currency, that the continued retention of the funds by the Government without its seeking a judicial determination of forfeiture constituted a deprivation of his property without due process of law, and that such a retention amounted to a cruel and unusual punishment. The Government answered and counterclaimed for a judgment of forfeiture. Both parties moved for summary judgment, and the case was submitted to the district court on an agreed statement of facts.

After filing a thorough narrative opinion, reported at 413 F.Supp. 394 (N.D.Cal.1975), the district court entered judgment for the Government on October 8, 1975, decreeing the funds seized from Ivers forfeited and awarding costs to the Government. In response to a motion by the plaintiff, however, on November 4, 1975, the district court entered an amended judgment, ordering the Government to remit $5000 of the seized funds, on the ground that it was exempt from the reporting requirements of 31 U.S.C. § 1101.

Because of the nature of the claims made below and reiterated on this appeal, it is necessary to review the underlying facts in some detail.

## I.

Upon passing through Customs at the San Francisco International Airport Ivers was asked by a Customs inspector whether he was carrying any currency. Ivers responded that he had about $1000 and produced a quantity of currency from his trousers pocket, which was determined by the inspector to amount to $1,148. In response to a further inquiry, Ivers indicated that he had no more money. A search of his person revealed, however, that he was carrying an additional $39,850.86 in a money belt which was strapped across his stomach beneath his outer clothing. Ivers was thereupon arrested for violation of 31 U.S.C. § 1058,[2] which provides a criminal penalty for willful violations of the reporting requirement contained in 31 U.S.C. § 1101. The $40,998.86 was seized pursuant to 31 U.S.C. § 1102.[3] Ivers was also charged with entering the United States after deportation in violation of 8 U.S.C. § 1326.

Ivers pleaded guilty to both criminal charges before a United States Magistrate and was sentenced to two concurrent sentences of six months each and fined $1000. He commenced his jail sentence on March 18, 1974, and upon its completion in September of that year was deported to Canada.

On October 31, 1973, some three and one-half weeks after seizure, the District Director of Customs sent Ivers a letter informing him that his $40,998.86 had been seized under the provisions of Public Law 91–508 (31 U.S.C. § 1101· *et seq.*), that he had the right to petition for relief from the penalty under section 618 of the Tariff

(2) receives monetary instruments at the termination of their transportation to the United States from or through any place outside the United States
in an amount exceeding $5,000 on any one occasion shall file a report or reports in accordance with subsection (b) of this section.

**2.** § 1058. Criminal Penalty
Whoever willfully violates any provision of this chapter [31 U.S.C. § 1051 *et seq.*] or any regulation under this chapter shall be fined not

more than $1,000, or imprisoned not more than one year, or both.

**3.** § 1102. Forfeiture
(a) Any monetary instruments which are in the process of any transportation with respect to which any report required to be filed under section 1101(a) of this title either has not been filed or contains material omissions or misstatements are subject to seizure and forfeiture to the United States.

Act,[4] and that if no such petition were received within sixty days, forfeiture proceedings would be instituted. In a letter dated February 4, 1974, Ivers' original attorney, Lawrence Marquette, requested an extension of time in which to file a petition for administrative relief until April 5, 1974. He further requested that "during the pendency of this extension no forfeiture proceedings be commenced by the United States or any of its agencies." In support of this request Mr. Marquette expressed his belief that the outcome of the criminal actions which had been brought against Ivers were "circumstances which should be presented as mitigating factors in any petition for remission." The requested extension was granted by the District Director in a letter of February 5, 1974.

Ivers submitted his petition for relief under 31 U.S.C. § 1104[5] on March 1, 1974. The Customs Service accepted this petition and commenced investigation into its merits. On July 15, 1974, Ivers' present counsel, Neil Bloomfield, who had been retained after the apparent disappearance from the case of Mr. Marquette, advised the San Francisco Seizure and Penalty Officer of the substitution of counsel and requested a copy of the petition that had been filed on Ivers' behalf. A copy was sent to Mr. Bloomfield on August 28, 1974. On November 10, 1974, Mr. Bloomfield submitted an amendment to the petition and, in a cover letter, indicated his view that "it would be a taking of property without due process to retain the funds without a judicial proceeding." He stated at that time that "[i]f the District Director of Customs does not remit the funds, naturally, the matter will have to be litigated."

The Customs Service rendered a decision denying Ivers' petition on February 11, 1975. The District Director notified Ivers of this decision by letter on February 19, 1975, and forwarded the case to the United States Attorney in San Francisco for commencement of forfeiture proceedings. These proceedings, as we have seen, were eventually brought by way of counterclaim to Ivers' suit, which was filed March 11, 1975.

## II.

 Ivers has contended throughout these proceedings that he was ignorant of any obligation to declare his currency. This contention, however, cannot survive his plea of guilty to 31 U.S.C. § 1058. That section makes it a crime "willfully" to violate any provision of Chapter 21 of Title 31, in this case, 31 U.S.C. § 1101. Recent cases confirm that willfulness is an essential element of a violation of 31 U.S.C. § 1058 and that a specific intent to commit the crime must be shown. *United States v. Granda*, 565 F.2d 922 (5th Cir. 1978); *United States v. San Juan*, 545 F.2d 314 (2d Cir. 1976). The transcript of the proceedings before the United States Magistrate at the time of the entry of Ivers' plea, while covering a number of passages noted as inaudible, adequately demonstrates an awareness of these principles on the part of all present. Our review of the transcript, moreover, relevant portions of which are quoted in the margin,[6]

---

4. Actually, the right to petition for relief from forfeitures effected under 31 U.S.C. § 1102 lies under 31 U.S.C. § 1104, quoted *infra* note 5.

5. § 1104. Remission of forfeiture or penalty
 The Secretary may in his discretion remit any forfeiture or penalty under this subchapter in whole or in part upon such terms and conditions as he deems reasonable and just.

6. MR. BROCKETT [attorney for Ivers]: The customs agent has reported to me that at the point of entry at San Francisco Airport when Mr. Ivers came into the country customs inspector Ward asked Ivers if he had any United States currency. Ivers replied that he did and laid a sum of United States currency out on the inspection belt. The amount of money produced by Ivers was later determined to be $1,198.86. Inspector Ward asked him if he had any more U.S. currency. Ivers replied in the negative. Inspector Ward then advised Mr. Ivers of the requirement for declared currency in excess of $5,000. Ivers stated that he was not aware of the reporting requirement. After being advised, Ivers did not declare, still did not declare his United States currency in excess of $5,000. And he was later searched and the money was found.

satisfies us that a sufficient factual basis for the plea was established and that it was therefore validly entered under Rule 11 of the Federal Rules of Criminal Procedure. While a non-frivolous argument to the contrary might well have been made to a finder of fact had Ivers chosen to proceed to trial, we must take his plea of guilty to be an admission of each and every essential element of the crime charged, including the element of knowledge and willfulness. This being so, Ivers is now, in a suit arising out of the same transaction and involving the same parties, collaterally estopped from denying that he willfully and knowingly failed to report the currency in his possession. *United States v. One 1964 MG*, 408 F.Supp. 1025, 1028 (W.D.Wash.1976). *See Nathan v. Tenna Corp.*, 560 F.2d 761, 763 (7th Cir. 1977); *Brazzell v. Adams*, 493 F.2d 489, 490 (5th Cir. 1974); 1B Moore's Federal Practice ¶ 0.418[1].

■ Ivers' plea of guilty to a violation of 31 U.S.C. § 1058, then, along with the agreed statement of facts submitted to the court, provided the district court with a sufficient factual basis upon which to enter a summary judgment of forfeiture under 31 U.S.C. § 1102. Any material issue of fact which might have prevented the entry of such judgment was conclusively resolved by Ivers' plea. Had a judgment of forfeiture been sought and obtained immediately following the seizure of Ivers' property, there could be no doubt of its validity. Whether other considerations in this case compel a different conclusion will be the subject of the following sections.

### III.

The basic issue on this appeal is whether the passage of time between the seizure of appellant Ivers' currency and the eventual institution of judicial forfeiture proceedings operated to deprive him of his property without due process of law. The district court resolved this question in the negative, resting its conclusion on alternative grounds: 1) that the Government was excused from its obligation promptly to institute judicial forfeiture proceedings while the investigation and resolution of Ivers' petition for administrative relief had not yet been completed; and 2) that in any event the Government's delay was excusable and justified under the circumstances of this case. After a review of some general principles, we discuss these grounds in turn.

### A

■ When a statute provides for the forfeiture of property as a consequence of the commission of an unlawful act, "the forfeiture takes effect immediately upon the commission of the act," constituting "a statutory transfer of the right to the United States at the time the offense is committed." *United States v. Stowell*, 133 U.S. 1, 16–17, 10 S.Ct. 244, 247, 33 L.Ed. 555 (1890); *Simons v. United States*, 541 F.2d 1351, 1352 (9th Cir. 1976). This right, however, must be "defined and consummated" by the judgment or decree of a court. *Confiscation Cases*, 74 U.S. (7 Wall.) 454, 461, 19 L.Ed. 196 (1898).

■ Ordinarily, of course, the Constitution demands that a person not be deprived of his property without previously having been afforded notice of the proposed action and an opportunity to be heard. *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). "[E]xtraordinary situations," however, may justify a departure

THE COURT: At the time you were asked to declare how much money you had . . . You were asked to declare how much money you had, were you not?

MR. IVERS: Yes.

THE COURT: And at that time, you produced somewhat in excess of $1,000, about $1198, is that right?

MR. IVERS: Yes.

THE COURT: And did he ask you at that time, was this all that you have?

MR. IVERS: Yes.

THE COURT: And you said yes?

MR. IVERS: Yes.

THE COURT: Well that, of course, was a false statement, wasn't it?

MR. IVERS: Yes.

THE COURT: And after that, did he state that you were required to report any currency in excess of $5,000.

MR. IVERS: Yes.

from this mandate and permit postponement of notice and opportunity for a hearing. *Id.* at 90, 92 S.Ct. 1983. Seizure of property for forfeiture to the Government is such a situation. *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); *United States v. One 1967 Porsche*, 492 F.2d 893 (9th Cir. 1974). In that situation, post-seizure notice and hearing are justified by the facts that seizure is "directly necessary to secure an important governmental or general public interest," that there is a "special need for very prompt action," and that seizure is initiated by "a government official responsible for determining, under the standards of a narrowly drawn statute, that it [is] necessary and justified in the particular instance." *Fuentes*, 407 U.S. at 91, 92 S.Ct. at 2000; *Calero-Toledo*, 416 U.S. at 678–80, 94 S.Ct. 2080. We find these justifications adequately presented here.

 While relieved of the necessity for a pre-seizure hearing, governmental officials in this area are not endowed with an unfettered discretion in choosing when to institute the requisite judicial proceedings. Due process requires that these proceedings be commenced with some promptitude. The Supreme Court has recognized this in the context of a seizure of obscene photographs under Section 305 of the Tariff Act of 1930, 19 U.S.C. § 1305(a), in *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971). The general applicability of this principle to seizure cases has been confirmed by this court, by our sister circuits, and by a number of the district courts. *United States v. 2,200 Paper Back Books*, 565 F.2d 566 (9th Cir. 1977); *United States v. One 1970 Ford Pickup*, 564 F.2d 864 (9th Cir. 1977); *Lee v. Thornton*, 538 F.2d 27 (2d Cir. 1976); *United States v. One (1) 1972 Wood, 19 Foot Custom Boat*, 501 F.2d 1327 (5th Cir. 1974); *States Marine Lines, Inc. v. Shultz*, 498 F.2d 1146 (4th Cir. 1974); *Sarkisian v. United States*, 472 F.2d 468 (10th Cir.), *cert. denied*, 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219 (1973); *United States v. One (1) Douglas A–26B Aircraft*, 436 F.Supp. 1292 (S.D.Ga. 1977); *United States v. A Quantity of Gold Jewelry*, 379 F.Supp. 283 (C.D.Cal.1974); *United States v. One 1971 Opel G. T.*, 360 F.Supp. 638 (C.D.Cal.1973).

Forfeiture statutes which fail to impose an explicit obligation upon the Government to commence prompt judicial proceedings have been construed to require administrative and judicial action within specific time limits in order to avoid a finding of facial unconstitutionality. *United States v. Thirty-Seven Photographs*, *supra*, 402 U.S. at 368, *et seq.*, 91 S.Ct. 1400; *Lee v. Thornton*, *supra*, 538 F.2d at 31; *States Marine Lines Inc. v. Shultz*, *supra*, 498 F.2d at 1155; *Sarkisian v. United States*, *supra*, 472 F.2d at 472.

B

The paucity of published judicial authority on sections 1102 and 1104 of Title 31 leaves us with little direct guidance in applying these provisions to the particular facts of a specific violation. The so-called Bank Secrecy Act of 1970, of which these provisions form a small part, was sustained against a variety of constitutional attacks by the United States Supreme Court in *California Bankers Association v. Shultz*, 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974). That case did not involve a forfeiture, however, nor did the Supreme Court address the question of timeliness in proceedings to enforce a forfeiture under the Act.

Neither sections 1102 and 1104 nor the regulations promulgated by the Secretary of the Treasury thereunder, 31 C.F.R. § 103.11 *et seq.*, themselves provide for the procedures to be followed with respect to the forfeiture and remission of seized monetary instruments. Responsibility for assuring compliance with these sections, however, has been delegated by the Secretary to the Commissioner of Customs. 31 C.F.R. § 103.46(a)(7). An immediate question arises, then, whether the statutes and regulations generally governing the Customs Service in its administration of other laws providing for the seizure and forfeiture of

goods—19 U.S.C. §§ 1602–1604;[7] 19 C.F.R. §§ 162.0 *et seq.*, 171.0 *et seq.*—are applicable to proceedings under sections 1102 and 1104 of Title 31. The Customs Service apparently took the view that they were, at least, in some respects, in this case,[8] and the district court relied upon one of the customs regulations, 19 C.F.R. § 171.1(a), in reaching its conclusion that judicial proceedings need not be commenced prior to the resolution of a pending petition for administrative relief. 413 F.Supp. at 400. The district court concluded, however, that 19 U.S.C. §§ 1602–1604 "do not govern the proceedings in cases such as that at bar," because they refer to "violations of the customs law," whereas "[t]he instant case is concerned with an alleged violation of a provision under the Money and Finance Title." *Id.* at 397 n. 3. This view has been adopted by another district court in our circuit. *United States v. One 1964 MG, supra,* 408 F.Supp. 1025 at 1028.

It is clear that Congress, in enacting what are now sections 1602–1604 of Title 19 as part of the Tariff Act of 1930, could not explicitly have intended their application to

a forfeiture provision enacted forty years later. On the other hand, if Congress intended these sections to govern customs officials generally in the enforcement of laws entrusted to their jurisdiction, the fact that those laws may have their substantive source elsewhere in the United States Code should not operate to preclude the fulfillment of this intent.

19 U.S.C. §§ 1602–1604 reflect a division of forfeiture proceedings into three stages: the report of the seizing officer to the "appropriate customs officer" (§ 1602); the appropriate customs officer's report to the United States Attorney (§ 1603); and the institution of court proceedings by the United States Attorney (§ 1604). Sections 1602 and 1604 provide that action be taken "immediately" and "forthwith"; section 1603 contains no such requirement. One court has read this requirement into section 1603 as well, noting that "the expedited proceedings by the seizing agent and by the United States Attorney can mean little if between the two there is a delay of any consequence." *Sarkisian, supra,* 472 F.2d at 471. In *Thirty-Seven Photographs, supra,*

7. § 1602. Seizure; report to customs officer

It shall be the duty of any officer, agent, or other person authorized by law to make seizures of merchandise or baggage subject to seizure for violation of the customs laws, to report every such seizure immediately to the appropriate customs officer for the district in which such violation occurred, and to turn over and deliver to such customs officer any vessel, vehicle, merchandise, or baggage seized by him, and to report immediately to such customs officer every violation of the customs laws.

§ 1603. Same; customs officer's reports

Whenever a seizure of merchandise for violation of the customs laws is made, or a violation of the customs laws is discovered, and legal proceedings by the United States attorney in connection with such seizure or discovery are required, it shall be the duty of the appropriate customs officer to report such seizure or violation to the United States Attorney for the district in which such violation has occurred, or in which such seizure was made, and to include in such report a statement of all the facts and circumstances of the case within his knowledge, with the names of the witnesses and a citation to the statute or statutes believed to have been violated, and on which reliance may be had for forfeiture or conviction.

§ 1604. Same; prosecution

It shall be the duty of every United States attorney immediately to inquire into the facts of cases reported to him by customs officers and the laws applicable thereto, and if it appears probable that any fine, penalty, or forfeiture has been incurred by reason of such violation, for the recovery of which the institution of proceedings in the United States district court is necessary, forthwith to cause the proper proceedings to be commenced and prosecuted, without delay, for the recovery of such fine, penalty, or forfeiture in such case provided, unless, upon inquiry and examination, such United States attorney decides that such proceedings can not probably be sustained or that the ends of public justice do not require that they should be instituted or prosecuted, in which case he shall report the facts to the Secretary of the Treasury for his direction in the premises.

8. Thus, for instance, the initial notice sent to Ivers appears to have been done in accordance with 19 C.F.R. § 162.31 (Notice of fine, penalty, or forfeiture incurred). The sixty-day period cited to the claimant also stems from these regulations. 19 C.F.R. § 162.32.

where the applicability of these sections was in doubt, the Supreme Court declined to apply them to cure the invalidity of the forfeiture statute there in question (19 U.S.C. § 1305(a)), because of their constitutional inadequacy. 402 U.S. at 368 n. 2, 91 S.Ct. 1400.

■ Since the section (1603) which governs the procedural stage at which the only delay of significance occurred in this case—the referral of a seizure to the United States Attorney for commencement of legal proceedings—fails to impose an obligation of expedition upon the Customs authorities, an obligation which flows independently from the Constitution, its application here would not further our inquiry. Accordingly, we find it unnecessary to decide at this time whether it and its fellow sections are to be applied to seizures under 31 U.S.C. ·§ 1102. We do hold, however, that proceedings involving such seizures are governed by the Customs Service's general regulations on the subject. This accords with Customs' own view of the matter, the lower court's reasoning, and internal textual indications in the regulations themselves.[9] The application of these regulations, construed in light of the Constitution's requirements, moreover, avoids a question of the facial constitutionality of 31 U.S.C. § 1102.

C

A central question in the determination of the procedures to be followed in forfeiture cases, and one which has provoked a bold conflict of rulings among the district courts in this circuit and elsewhere, con-cerns the effect of a claimant's petition for administrative relief upon the Government's obligation to move quickly in seeking a judicial determination of forfeiture. There are a number of good policy reasons why a procedural sequence in which the administrative determination precedes institution of judicial proceedings may be preferred. Administrative proceedings generally involve less formality and less cost than their judicial counterparts. Since requests for remissions of forfeitures are frequently granted, obviating any need for judicial action, unnecessary and burdensome court proceedings may be avoided by allowing the administrative process to occur first. This sequence, moreover, spares litigants the hardships which simultaneous administrative and judicial proceedings might impose, especially where, as here, a litigant is involved in defending himself against criminal charges.

These considerations no doubt guided the Customs Service in the formulation of its regulations, and motivated the lower court's conclusion here that "the Government is not compelled . . . to commence judicial proceedings so long as the Secretary is conducting prompt administrative proceedings which might result in remission of property seized." 413 F.Supp. at 400. This conclusion placed the court in conflict with the earlier decisions of *United States v. A Quantity of Gold Jewelry, supra,* 379 F.Supp. 283 (C.D.Cal.1974), and *United States v. One 1971 Opel G. T., supra,* 360 F.Supp. 638 (C.D.Cal.1973), the latter of which quite squarely put the arguments *contra.*[10] Any impediments which these de-

---

**9.** See, e. g., 19 C.F.R. § 162.21, which provides, in part:

(a) *Seizures by Customs officers.* Any Customs officer having reasonable cause to believe that any law, *the enforcement of which is within the jurisdiction of the Customs Service,* has been violated by reason of which any property has become subject to forfeiture, shall seize such property if available. . . . (Emphasis added.)
*See also* 19 C.F.R. § 171.0 ("Scope"):

This part contains provisions relating to filing of petitions and actions upon petitions for relief from fines, penalties, and forfeitures incurred, and petitions for the restoration of proceeds from sale of seized and forfeited property.

**10.** The Government claims that delay in this case is, in substantial part, attributable to the Claimant. Why? Because the Claimant had the temerity to file an administrative claim under § 1618 and thus, says the Government, she consented—and that word is the Government's, not mine—to a great deal of delay, namely, she consented to whatever time it would take for the Secretary to adjudicate the administrative claim.

That callous and inaccurate view of the situation is one which the Court cannot accept. Surely, the Claimant is not to be disad-

cisions presented were thought removed by the facts that 1) they were based on an interpretation of 19 U.S.C. §§ 1602–1604, and 2) they neglected to consider the effect of 19 C.F.R. § 171.1(a), which provides that "no action shall be taken on any petition if the civil liability has been referred to the U.S. Attorney for institution of legal proceedings." Given this regulation, the court reasoned, institution of legal proceedings prior to resolution of the administrative petition would "foreclose the effective use of the generally more desirable administrative relief," 413 F.Supp. at 400, thus undermining the choice of a claimant who seeks that relief.

Several courts have now adopted this view of the matter. *United States v. One Motor Yacht Named Mercury*, 527 F.2d 1112 (1st Cir. 1975); *United States v. One (1) 1973 Ford LTD*, 409 F.Supp. 741 (D.Nev. 1976); *United States v. One 1964 MG, supra*, 408 F.Supp. 1025. Another court has explicitly taken issue with the conclusion and analysis of the lower court here, holding that the pursuit of administrative relief "is neither a waiver of the right to complain about unreasonable delay nor justifies additional delay," a "conception of the law" which it considered the "antipode" of what was held by the courts here and in *One 1964 MG, supra*. *United States v. One (1) Douglas A–26B Aircraft, supra*, 436 F.Supp. 1292, 1297. Finally, it appears that another panel of this court has spoken to this very issue, albeit in dictum. In *United States v. One 1970 Ford Pickup, supra*, 564 F.2d 864, the following was said by way of footnote:

> Although not raised in the Government's brief, it could be argued that the claimant's filing of an administrative petition for remission tolled the running of the time period inherent in §§ 1602–1604. Although one circuit has hinted that this might be the case, *see One Motor Yacht*

vantaged or penalized for seeking the cheapest way to assert her rights without the need of a lawyer and for taking what the Claimant apparently believed would be the quickest way to get her property back.

360 F.Supp. at 640–41. See also *Boston v. Stephens*, 395 F.Supp. 1000, 1004–05 (S.D.Ohio 1975):

*Named Mercury*, 527 F.2d at 1114, we conclude that the administrative and judicial proceedings are independent remedies and that neither is an excuse for the tolling of the other. *See A Quantity of Gold Jewelry*, 379 F.Supp. at 287; *One 1971 Opel G. T.*, 360 F.Supp. at 641.

*Id.* at 867 n. 2.

Since *One 1970 Ford Pickup* did not decide this question with the benefit of full briefing, did not consider the effect of 19 C.F.R. § 171.1(a), and involved proceedings in which 19 U.S.C. §§ 1602–1604 were clearly applicable, we would not be inclined to be guided by it if our own analysis led us in a different direction. That analysis, however, leads us to agree with the prior panel and for the following reasons.

■ Administrative consideration of a claimant's petition for remission is not governed by any statutory or regulatory requirement of promptitude. Nor does it not afford a claimant the full panoply of due process rights inherent in a judicial proceeding. Remission being a matter of legislative grace, the exercise of the Secretary's discretion is not reviewable by the courts. *United States v. One 1972 Mercedes-Benz 250*, 545 F.2d 1233, 1236 (9th Cir. 1976). While we have noted considerations, including the interests of most claimants, which demonstrate the general desirability of exhausting the administrative remedy prior to the institution of judicial proceedings, we are unable to see how the mere filing of a petition for remission can operate to deprive a claimant of his right to prompt adjudication, absent an express waiver of that right. Nor can we see how 19 C.F.R. § 171.1(a) can be read as forcing a waiver of that right upon a claimant who chooses to file for administrative relief. While we agree with the district court that nothing

Customs officials cannot rely upon an administrative petition for relief as a device for nullifying the person's due process right to a speedy and fair forfeiture adjudication. [citing *Gold Jewelry, One 1971 Opel G. T.*]

requires the Secretary to continue "duplicative administrative proceedings," 413 F.Supp. at 400 n. 7, his policy decisions in this area cannot serve to deprive claimants of rights they would otherwise enjoy, absent their express consent. We hold, then, that the mere filing of a petition for remission under 31 U.S.C. § 1104 does not excuse the Government from its obligation to commence prompt judicial proceedings until that petition is decided. This does not, of course, preclude the parties from *agreeing* that judicial action should be postponed pending the resolution of an administrative claim; it simply prevents the unilateral adoption of that course by the Government.

#### D

 It remains to apply the foregoing principles to the facts of this case. We have determined that the pendency of an administrative petition cannot, without more, justify a delay in seeking a judicial determination of forfeiture. On the other hand, the mere fact of delay does not compel the conclusion that a claimant has been denied his due process rights, for, as the Supreme Court noted in *Thirty-Seven Photographs*, 402 U.S. at 374, 91 S.Ct. at 1407, "[n]o seizure or forfeiture will be invalidated for delay . . . where the claimant is responsible for extending either administrative action or judicial determination beyond the allowable time limits." *See also United States v. 2,200 Paper Back Books,* *supra,* 565 F.2d at 572–73. Whether delay can sufficiently be attributed to a claimant will require a careful scrutiny of the particular circumstances and history of each case. As an alternative ground for its holding, the court below found that "the conduct of the instant plaintiff was such as to excuse and justify the Government's delay." 413 F.Supp. at 401. Whether we view this conclusion as a finding of fact or as an application of law to facts, we are satisfied of its correctness.

The simple reason why legal proceedings were not commenced here until some eighteen months after seizure is that the case was not referred to the United States At-

torney for this purpose until after a decision had been reached on the administrative petition. There is little doubt that, had it chosen to do so, the Government could have presented the requisite prima facie case for forfeiture at a much earlier time. While a proper consideration of Ivers' petition for remission, addressed to the Secretary's discretion, may legitimately have required a more substantial investigation, the essential elements of a claim of forfeiture had been established at the time of the offense, or shortly thereafter. This is evidenced by the fact that the Government was able promptly to commence criminal proceedings against Ivers.

We find, however, that the Government's deferral of a reference of the case to the United States Attorney rested not only upon its conception of its obligations, but upon an understanding in which Ivers may be said to have concurred. The delay must be viewed in its proper context. Ivers was enmeshed in an assortment of legal proceedings, criminal, civil, and administrative. For six months of the period in question he was incarcerated. He had been notified of his right to petition for relief and of the fact that judicial proceedings would be commenced against his property if he chose not to submit a petition. We have no reason for doubting that if no petition had been filed, the Government would have commenced judicial forfeiture proceedings in a timely fashion. His attorney had requested and was granted an extension of time in which to file a petition, and it was specifically requested that no judicial proceedings be commenced during the period of that extension. At no point before or after the filing of the petition did Ivers specifically demand the institution of judicial proceedings. We think these circumstances entitled the Government to believe that those proceedings could legitimately be postponed until after a decision had been rendered on Ivers' administrative petition. Rather than evincing a callous disregard of Ivers' rights, these circumstances demonstrate a willingness on the part of the Government to accommodate his requests and to protect his interests.

Several additional considerations support our conclusion. First is the apparent absence of any prejudice to Ivers flowing from the challenged delay. He has not shown any respect in which his defense to forfeiture was impaired by the passage of time. Moreover, the currency seized was not a wasting asset; any value lost by its retention could have been restored by the addition of interest had Ivers prevailed in the forfeiture action. Secondly, Ivers was not barred from initiating judicial action himself, if he so chose. While the duty to institute forfeiture proceedings rests with the Government and may not be shifted to the claimant, his choice not to commence proceedings for restitution of his property provides a further indicium of his "wait-and-see" attitude. Lastly, this court is reluctant to impose a strict obligation on the Government to seek judicial relief immediately, with the increase of litigation and burdens on litigants that would entail, where, as here, the circumstances are equivocal. A more compelling case of prejudicial delay than what has been shown here would have to be demonstrated before we would be willing to deprive the Government of a forfeiture to which it otherwise has a legitimate entitlement.

■ By way of summary, we review our holdings. The pendency of a claim for administrative relief, standing alone, does not toll the Government's obligation promptly to afford a claimant an opportunity for a judicial hearing on the propriety of forfeiture. Where a claimant desires to seek administrative relief, the Government is advised to secure an express waiver from him of any objections to the delays which that may entail. On the other hand, claimants who stand by mutely while time passes, facilitating or condoning delay by their requests or other actions, will not later be heard to complain of prejudicial delay. Because we find that the delays in this case were justifiable and non-prejudicial under the circumstances, we do not need to specify in any greater detail the time limitations which should be observed by the Government in proceedings to forfeit seized property.

## IV

As we have noted, subsequent to its original judgment the district court below ordered the remission of $5000 to Ivers, apparently being of the view that, since only those transportations which involve monetary instruments in amounts exceeding $5000 are required to be reported by 31 U.S.C. § 1101, forfeiture under 31 U.S.C. § 1102 can only attach to such excess. This interpretation of the statutory scheme has found acceptance in another district court in this circuit. *United States v. One 1964 MG, supra,* 408 F.Supp. 1025 (W.D.Wash. 1976). The court there, in concluding that the "initial $5000" is exempt from forfeiture, relied upon the lower court's amended judgment in the present case and upon its reading of section 1102(a), opining that "[i]f Congress desired to subject to forfeiture the initial $5,000 for which no report need be filed, it could have said so in plain language." *Id.* at 1029. We have found no other cases which pass upon this question.

The language of section 1102(a) is categorical:

> *Any* monetary instruments which are in the process of *any* transportation with respect to which *any* report required to be filed under section 1101(a) of this title either has not been filed or contains material omissions or misstatements *are subject to seizure and forfeiture to the United States.* (Emphasis added.)

Neither the Secretary's regulations under this statute, 31 C.F.R. § 103.48, nor the form upon which the reports are required to be made, Treasury Department Form 4790, provides for an exemption from forfeiture of any part of funds as to which a report is required. Nor does the legislative history of the Bank Secrecy Act provide any contrary indication. *See, e. g.,* H.R.Rep. No. 91–975, 91st Cong., 2d Sess. (1970); U.S. Code Cong. & Admin.News 1970, p. 4394.

■ We read this statutory framework as permitting the forfeiture of the entire amount of monetary instruments which are transported in violation of section

1101. In providing that amounts not exceeding $5000 need not be reported, section 1101 obviously was meant to avoid creating the problems of enforcement and imposing unnecessary inconveniences upon travelers which would result were the reporting obligations extended to small or insignificant amounts of money. That provision, however, serves merely to define those transportations as to which reports must be filed. It determines *when* travelers and others must report transportations of monetary instruments; once a transportation falls within its scope, the entire amount transported must be reported. A transportation of monetary instruments in excess of $5000 is clearly a "transportation with respect to which [a] report [is] required to be filed under section 1101(a)," as that phrase is used in section 1102(a). "*Any* monetary instruments which are in the process" of such a transportation are subject to seizure and forfeiture. The statutory language could not be clearer.

The treatment of the "first" $5000 as a *casus omissus* not only would require a strained reading of the statute, but also could result in frustration of the manifest congressional intent to prevent the unreported flow of currency and other monetary instruments across our national boundaries. If, for instance, a violator were found to have transported $5001, the lower courts' interpretation of the statute would permit the forfeiture of only $1.00. The risk of losing $1.00 would hardly aid in deterring a wrongdoer intent upon flouting the law.

The judgment of the district court is affirmed, except insofar as it ordered the remission of $5000 to appellant Ivers, in which respect it is reversed. The case is remanded for entry of judgment declaring the entire amount of unreported currency forfeited.