Julie Lelath **SEGUIN**, Appellee,

v.

Donald L. **EIDE**, et ux., Appellant.

No. 79–4130.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 11, 1980.

Decided May 18, 1981.

Rehearing and Rehearing En Banc Denied Aug. 28, 1981.

Charles Pinnell, Seattle, Wash., for appellant.

Richard Pierson, Seattle, Wash., for appellee.

Before GOLDBERG,* Senior Judge, KILKENNY, Senior Judge, and BOOCHEVER, Circuit Judge.

BOOCHEVER, Circuit Judge:

This is an appeal from an adverse personal judgment against Donald Eide, a district director of United States Customs. Ms. Seguin brought a *Bivens*-type action[1] against Eide, alleging that customs agents who seized her automobile violated her fifth amendment due process rights when they failed to refer her case promptly to the United States Attorney for forfeiture proceedings. Eide maintains that: (1) as a matter of law, the period between the time the seizure was reported to him and referral for forfeiture was too short to amount to a due process violation; (2) he is covered by official immunity; (3) no *Bivens*-type action can be maintained because Seguin could have pursued other remedies; and (4) the damage award was excessive. We agree with this latter contention and remand the case for a redetermination of damages, but conclude that Eide is personally liable.

I. FACTS

On February 5, 1975, David Benson, who identified himself as Michael Morrison,

---

* Honorable Irving L. Goldberg, Senior Circuit Judge, Fifth Circuit, sitting by designation.

1. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *Bivens* involved an implied right of action under the fourth amendment. This court has concluded that a private right of action can be implied for taking property without compensation under the fifth amendment. *Weiss v. Leh-* man, 642 F.2d 265 (9th Cir. 1981); *Jacobson v. Tahoe Regional Planning Agency*, 566 F.2d 1353, 1363–65 (9th Cir. 1977). In *States Marine Lines v. Schultz*, 498 F.2d 1146 (4th Cir. 1974), the Fourth Circuit concluded that a plaintiff could bring a cause of action against a federal official when his goods had been illegally detained by customs agents. *See* Comment, 29 Emory L.J. 231 (1980).

presented an air waybill to a customs inspector at the Seattle-Tacoma International Airport. Benson attempted to pick up two packages from South Africa. Ms. Seguin accompanied Benson to the airport in Benson's automobile. She testified that Benson did not feel well and did not want to drive alone. The customs inspector became suspicious of Benson and told him that he was not going to release the packages until he had them appraised. Benson gave the inspector Ms. Seguin's number to call when the appraisal was completed. When Benson and Seguin left, the inspector opened the packages and found forty-four South African gold Krugerrands secreted in the frames of two plaques.

Special agent Hightower determined that Krugerrands were merchandise subject to declaration. In consultation with the United States Attorney's office, he arranged a controlled delivery of the packages. On February 7, a freight agent called Benson at Ms. Seguin's number to notify him that the packages could be cleared.

That day Ms. Seguin drove Benson to the airport in her car, a 1974 Dodge Dart. After Benson picked up the plaques, Seguin drove him back to Seattle where she left him and the packages at a house at 416 35th Avenue. About two hours later, customs agents executed a search warrant of the house and arrested Benson and his wife. The Bensons were jointly indicted for smuggling. David Benson was charged with entering merchandise into the United States under a false declaration.

Hightower called Seguin's lawyer on February 12 to tell him that he was considering seizing her car for forfeiture because of its use in smuggling. The next day, Hightower took the car from Seguin's driveway and drove it to the Federal Building. The case was referred to Mr. Eide on February 14, 1975.

In an attempt to get her car back, Ms. Seguin wrote a letter to Eide on February 25. She explained that she was a 73-year-old, partially crippled widow who needed her car to move musical instruments. She stated that she took Benson to the airport because he was a member of her church and that she frequently did errands of this kind for the church. She said that she did not know anything about the contents of the packages. On March 19, 1975, Eide responded that her application for relief was under consideration.

On May 15, 1975, the district court dismissed the smuggling count against Benson and his wife because the court concluded that Krugerrands were currency, not merchandise. The government voluntarily dismissed the false declaration count against Benson the next day. Eide was informed of these events by Seguin's lawyer on or before May 27. On June 10, the Justice Department advised the United States Attorney's office not to take an appeal from the district court's dismissal of the smuggling count.

Despite the failure of the criminal case against the Bensons, Eide did not release Seguin's car. Instead, on July 3, Customs referred the case to the United States Attorney's office for a judicial forfeiture. The United States Attorney's office declined to bring a forfeiture action. The car was finally released on August 6, 1975, approximately six months after it was seized.

Seguin initially brought her damage action in King County Superior Court against both Hightower[2] and Eide. The government removed the case to federal district court, where a jury ultimately rendered a general verdict in favor of Hightower but against Eide in the amount of $7,300. The theory of Seguin's case against Eide was that he had violated Seguin's due process rights by failing to refer her case to the United States Attorney's office promptly once the car had been seized. After Eide's motion for a new trial was denied, he brought this appeal.

---

2. The Bensons also sued agent Hightower for alleged violation of fourth amendment rights. Their case was dismissed on a motion for summary judgment and we affirmed based on Hightower's qualified immunity defense. *Benson v. Hightower*, 633 F.2d 869 (9th Cir. 1980).

## II. THE DUE PROCESS VIOLATION

■ Title 19 of the United States Code section 1595(a) and cases interpreting that section provide that any type of vehicle may be seized and forfeited if there is probable cause to believe that it was used to facilitate the importation of illegal goods into the United States. The innocence of the owner is not usually a defense. *See Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).[3]

Once an agent seizes property for forfeiture, he has a duty to report the seizure "immediately" to the appropriate district customs officer. 19 U.S.C. § 1602. After a forfeiture case has been referred to a United States Attorney by a district customs officer, it is the United States Attorney's duty to investigate the facts "immediately," and if necessary to begin legal proceedings "forthwith." 19 U.S.C. § 1604. As to the intervening period of time between reporting a seizure and referral, when a customs director is in possession of an article, the law now provides that he shall "promptly" report the seizure to the United States Attorney. 19 U.S.C. § 1603. The word "promptly" was not added to section 1603 until 1978, three years after the seizure of Seguin's car. There could be little doubt before this amendment, however, that this was the appropriate standard placed upon Eide.

In *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971), the Court considered a seizure of photographs under 19 U.S.C. § 1305(a). That section allows customs agents to seize obscene material that is being imported into the United States. Once a seizure has taken place, the government must bring a forfeiture proceeding in district court. Like section 1603 before the 1978 amendment, section 1305(a) does not provide for any time limit between an initial seizure and institution of judicial proceedings. The Supreme Court concluded, however, that to save the statute from being unconstitutional, only a fourteen-day period might be allowed. *Id.* at 373–74.

There are certainly differences between a case presenting an issue of prior restraint under the first amendment, such as *Thirty-Seven Photographs*, and a case such as this one which presents a question of due process. The implication of the Court's decision, however, is that lengthy and unexplained delays will not be tolerated. *See White v. Acree*, 594 F.2d 1385, 1388 (10th Cir. 1979).

In *United States v. One 1970 Ford Pickup*, 564 F.2d 864, 866 (9th Cir. 1977), we stated:

> From the standpoint of the claimant, the stage in the procedures at which excessive delay occurs is irrelevant. His concern, and the concern of the statutory scheme, is the quick and efficient determination of the property rights in the confiscated vehicle. Furthermore, if reasonable time limits are not placed upon the application of §§ 1602–1604, a question of the constitutionality of the statutes could be raised.

*See also, Sarkisian v. United States*, 472 F.2d 468, 471 (10th Cir.), *cert. denied*, 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219 (1973).

The judge instructed the jury that Eide had a duty to either report the forfeiture of Seguin's car to the United States Attorney promptly so that forfeiture proceedings could begin, or to release it. The court further instructed the jury that promptness had to be inferred "in light of all relevant facts and circumstances." This instruction comports with the law.

Eide contends that the court should have ruled as a matter of law that the delay between seizure and referral was not excessive. He maintains that no court has found a due process violation where the delay

---

**3.** We have noted that in *Calero* there are indications that serious constitutional problems could arise where a claimant can prove that he was uninvolved and unaware of the unlawful activity and not guilty of any negligence which permitted it. *United States v. One 1972 Mer-* *cedes-Benz 250*, 545 F.2d 1233, 1236 (9th Cir. 1976) (defense not applicable on facts); *see also United States v. One 1972 Chevrolet Blazer*, 503 F.2d 1386, 1388–90 (9th Cir. 1977); *Wiren v. Eide*, 542 F.2d 757, 764 n.9 (9th Cir. 1977).

between a seizure and referral has been as short as four months and nineteen days, the period from February 14, 1975 when the seizure was reported to July 3, 1975.

■ Several courts have concluded that there was no due process violation where there was a far longer delay between seizure and referral than there was in this case. One similarity among these cases, however, is that administrative investigation before referral of the claim caused the delay.[4] In some cases the courts specifically accepted the position, rejected by this court, that filing an administrative petition can toll the period between seizure and referral. The rule in this circuit is that filing a petition for remission under section 1618 [5] does not excuse the government from referring a case promptly. *Ivers v. United States,* 581 F.2d 1362, 1372 (9th Cir. 1978).[6]

■ There are sufficient facts from which a jury could find that Eide did not act promptly. From Seguin's letter, Eide knew or should have known of the possible hardship. The underlying criminal indictment was dismissed. Although the agents might have legally seized Ms. Seguin's car even though she was innocent, *see Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 689–90, 94 S.Ct. 2080, 2094–95, 40 L.Ed.2d 452 (1974), this likelihood increases the importance of an expedited referral particularly since an automobile is a rapidly depreciating asset. *See United States v. One 1970 Ford Pickup,* 564 F.2d 864, 866 (9th Cir. 1977) (the court held that "[b]ecause of the fast depreciating nature of an automobile, the Government's claim

that no prejudice to the claimant resulted from the untimeliness of the Government's action is clearly without merit"). *Stypmann v. City and County of San Francisco,* 557 F.2d 1338, 1344 (9th Cir. 1977) ("Days, even hours, of unnecessary delay may impose onerous burdens upon a person deprived of his vehicle.").

## III. OFFICIAL IMMUNITY

Eide next contends that he is protected from suit by official immunity and objects to a jury instruction on the issue.

■ Executive branch officials are ordinarily accorded only a qualified immunity from *Bivens*-type actions, *Butz v. Economou,* 438 U.S. 478, 504–08, 98 S.Ct. 2894, 2909–11, 57 L.Ed.2d 98 (1978). Officials will be liable where they actually know or should know that an action violates someone's constitutional rights. The Supreme Court has concluded that this standard for determining liability requires that the constitutional rule be clearly established at the time the official is responsible for some action. *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 5 L.Ed.2d 24 (1978); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed. 214 (1975). "The official cannot be expected to predict the future course of constitutional law ..." *Procunier,* 434 U.S. at 562, 98 S.Ct. at 859.

■ Eide argues that he could not possibly have predicted at the time this case arose that filing a petition for remission would not toll the time available to refer the case to the United States Attorney. He

---

**4.** *See White v. Acree,* 594 F.2d 1385 (10th Cir. 1979); *United States v. One 1973 Buick Riviera Auto.,* 560 F.2d 897 (8th Cir. 1977); *United States v. One (1) 1972 Wood, 19 Foot Custom Boat,* 501 F.2d 1327 (5th Cir. 1974); *United States v. One 1973 Ford LTD,* 409 F.Supp. 741 (D.C.Nev.1976).

**5.** 19 U.S.C. § 1618 provides that penalties may be mitigated if the Secretary of the Treasury finds that the owner was without negligence or intent to violate the law. Ordinarily a decision under § 1618 is not reviewable in the courts. *See, e. g., United States v. One 1970 Buick Riviera,* 463 F.2d 1168, 1170 (5th Cir.), *cert. denied,* 409 U.S. 980, 93 S.Ct. 314, 34 L.Ed.2d

244 (1972). Administrative remedies may thus be of some importance to the innocent owner of a seized article.

**6.** *Ivers v. United States,* 581 F.2d 1362, 1372 (9th Cir. 1978) was decided after this case arose. Therefore, although there may in fact have been a due process violation because Seguin's letter requesting the return of her car did not toll the referral period, it is possible that Eide might have concluded that the petition extended the time available to him before referral was required. The reasonableness of this belief is discussed in consideration of the applicability of official immunity.

notes that before this circuit's decision in *Ivers v. United States*, 581 F.2d 1362 (9th Cir. 1978), the district courts within the Ninth Circuit were split on the tolling effect of an administrative review of a seizure. He also contends that it was Customs' practice to await the outcome of such a review before referring a case.

At the time Eide delayed referral the two district courts in the Ninth Circuit which had addressed the issue concluded that a petition for remission cannot justify a delay in referring a case for forfeiture. *See United States v. A Quantity of Gold Jewelry*, 379 F.Supp. 283, 287 (C.D.Cal.1974), *aff'd in part, vacated in part and remanded*, 554 F.2d 1072 (9th Cir. 1977); *United States v. One 1971 Opel G. T.*, 360 F.Supp. 638 (C.D.Cal.1973). On the other hand, in two cases decided after the Seguin case was referred to the United States Attorney, *United States v. One (1) 1973 Ford LTD*, 409 F.Supp. 741 (D.Nev.1976) and *United States v. One 1964 MG*, 408 F.Supp. 1025, 1028–29 (W.D.Wash.1976), *rev'd on other grounds*, 584 F.2d 889 (9th Cir. 1978), the courts concluded that the filing of a petition for remission could toll the requirement for a prompt referral during the time the government investigated the petition.[7] The court in *Ivers* noted that the issue

> has provoked a bold conflict of rulings among the district courts in this circuit and elsewhere . . . .

581 F.2d at 1370. Since the conflict arose after Eide's inaction, there is slight merit to Eide's argument that he might reasonably have believed that he could delay referring Seguin's case to the United States Attorney while it was under investigation by his office.

In any event, courts that have allowed an administrative review to delay a referral, have also noted that an administrative review cannot serve as a pretext to justify delays. *See One 1964 MG*, 408 F.Supp. at 1029. Therefore, even if Eide had believed that he could delay referring the case to the United States Attorney while his office investigated the case, a reasonable official would have realized that the investigation had to be completed promptly.

The evidence indicates that customs officials, who seemed to be primarily concerned with the case against the Bensons, did little more than write several letters to Seguin's attorney stating that her case was under investigation. From this evidence a jury might conclude that Eide was unreasonable if he believed that this was sufficient action to justify a four and one-half month administrative delay.

Finally the jury instruction to which Eide has objected substantially comports with the law relating to official immunity.[8]

## IV. ALTERNATIVE CAUSES OF ACTION

Eide next contends that a *Bivens*-type action should not be allowed because Seguin might have pursued other remedies as an alternative to a *Bivens* action. *Bivens* suggests that where Congress has acted affirmatively to provide an alternative avenue for relief, a *Bivens* action should not be allowed. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 396–97, 91 S.Ct. 1999, 2004–05, 29 L.Ed.2d 619 (1971). Eide's argument, however, must be reviewed in light of the Supreme Court's recent decision in *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), a case decided after this case was briefed. It is plain from

---

7. It is difficult to understand how Eide could rely on these opinions because they were not decided until after Seguin's case arose, but they do point to some uncertainty in the law.

8. The text of the instruction was as follows:
   If, after considering all the evidence in this case, you find by a preponderance of the evidence that there were reasonable grounds for defendant Eide to believe that it was appropriate for him to defer the reporting of the seizure to the United States Attorney until July 3, 1975, and if you further find that defendant Eide acted in good faith in believing that it was appropriate for him to defer the reporting until that date, then you should find for defendant Eide even though you find that he did not promptly report the seizure to the United States Attorney for the commencement of forfeiture proceedings.

the Court's opinion in *Carlson* that *Bivens* is to be given an expansive reading. In *Carlson* the Court concluded that the availability of a remedy under the Federal Tort Claims Act (FTCA) would not foreclose a *Bivens* action. *Id.* at 23, 100 S.Ct. at 1474. The Court noted that Congress had not indicated that the FTCA was to replace *Bivens*-type actions, and further noted several other features of *Bivens* actions that were unlike actions brought under the FTCA. Among them, *Bivens* would serve a greater deterrent purpose by making officials personally liable, and a plaintiff has a right to a jury under *Bivens*, but not under the FTCA.

In this case Eide has hypothesized that several alternative remedies were available to Seguin. Essentially, the alternatives were: (1) Seguin could have brought an action for the return of her car or withdrawn her administrative petition, or (2) she might have brought an action under the Tucker Act, 28 U.S.C. § 1346(a)(2).

The first possible remedy is plainly an inadequate substitute for a *Bivens* action. Seguin could not have recovered any damages had she abandoned her administrative remedies.

For many of the reasons cited by the Court in *Carlson*, we also conclude that the possibility of a claim against the United States under the Tucker Act was inadequate to foreclose a *Bivens* action. There is no right to a jury trial under the Tucker Act. 28 U.S.C. § 2402. An action against the United States would not have the same deterrent effect as an action against Eide personally. Furthermore, because Seguin's complaint alleged over $12,000 in damages, the district court would not have had jurisdiction to decide the case. 28 U.S.C. § 1346(a)(2).

Seguin therefore could properly base a claim on a constitutional violation.

## V. DAMAGES

The jury awarded Seguin $7,300 in damages. Eide contends that the damage award is excessive for two reasons. First, there was no showing of loss of use damages in excess of either $1,360 or $1,738, the cost that Ms. Seguin would have incurred to rent a replacement car, according to the testimony. Second, the jury should not have been permitted to award damages for mental anguish or emotional distress.[9]

Because the jury returned a general verdict, it is not possible to determine how much of the award is for Seguin's emotional distress and how much is for actual loss of use of her car.

The general state court rule is that absent bodily injury, damages for emotional distress for wrongful garnishment or other seizures of property are not recoverable unless there is willful or malicious conduct. Annot., 83 A.L.R.3d 598 (1978). Unless there is an increased probability, that because of willful misconduct, there may actually have been emotional distress damages, the rule prevents recovery for easily feigned injuries. Federal courts may look to state law in fashioning a proper damage award for violations of constitutional rights, *see Sullivan v. Little Hunting Park*, 396 U.S. 229, 240, 90 S.Ct. 400, 406, 24 L.Ed.2d 386 (1969), and we believe that the general rule should be utilized in this case.

Seguin has cited a number of cases against state officials arising under 42 U.S.C. § 1983 for the proposition that emotional distress damages are available. Although the analogy between a *Bivens* action and a 1983 action is not misplaced, in all of the section 1983 cases cited by Seguin the defendant's conduct was specifically found to be intentional or willful, or such conduct could be readily inferred from the facts.

Proof of intentional or willful misconduct is not a prerequisite for bringing either a § 1983[10] or *Bivens* action. *Ba-*

---

**9.** Eide objected to the submission to the jury of the issue of emotional damages.

**10.** On March 2, 1981, the Supreme Court heard argument in *Parratt v. Taylor*, No. 79–1734.

One issue in *Parratt* is whether the conceded negligence of prison officials could justify a § 1983 action.

*sista v. Weir*, 340 F.2d 74, 81 (3d Cir. 1965); *See, Weiss v. Lehman*, 642 F.2d 265 (9th Cir. 1981). Furthermore, government officials may lose their official immunity whenever they "know or *should* know" they are "acting outside the law." *Butz v. Economou*, 438 U.S. 478, 506, 98 S.Ct. 2894, 2910, 57 L.Ed.2d 98 (1978) (emphasis added). The standard thus encompasses the familiar tort standard of reasonableness. We are satisfied that Seguin introduced sufficient evidence from which it might be inferred that her constitutional right to due process was violated and that Eide should have known that he was acting beyond the permissible bounds of the law. This, however, does not necessarily imply that his conduct was willful or malicious.

The jury was not instructed that they had to find Eide's behavior was intentional or malicious before awarding damages for emotional distress. Moreover, our own review of the record convinces us that Eide's failure to refer promptly Seguin's automobile for forfeiture was not intentional or malicious. We hold that damages for emotional distress cannot be awarded.

It is therefore necessary to remand the case for a computation of Seguin's damages from the loss of use of her car. Such damages might include such items as the cost of rental cars and attorney fees reasonably incurred to recover her car.

The judgment of the district court is AFFIRMED IN PART and REVERSED AND REMANDED IN PART.