652 F.2d 817
 UNITED STATES of America, Plaintiff-Appellee,
v.
ONE 1971 BMW 4-DOOR SEDAN, MODEL 2800, GRAY IN COLOR VIN
2320587, AZ. LIC. RNM-898, Defendant,
and
Ralph Tracy Eddinger, Claimant/Defendant-Appellant.
 No. 79-3310.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 11, 1981.
Decided Aug. 3, 1981.
 
 Phillip R. Morgan, Tucson, Ariz., for claimant/defendant-appellant.
 Virginia Mathis, Tucson, Ariz., for plaintiff-appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before SNEED and SKOPIL, Circuit Judges, and NIELSEN*, District Judge.
 SNEED, Circuit Judge:
 
 
 1
 Appellant Eddinger appeals from the district court judgment and decree of forfeiture to the United States of a 1971 BMW sedan used to facilitate the sale of a controlled substance. He challenges the forfeiture on four grounds: (1) that he was entitled under the Constitution to a probable cause hearing within 72 hours of the government's seizure of his automobile; (2) that the two and one-half month lapse of time between the seizure and initiation of in rem judicial forfeiture proceedings deprived him of his constitutional rights; (3) that he was given inadequate notice of his right to petition for administrative remission of forfeiture; and (4) that the district court erred in finding probable cause for seizure. We affirm the judgment and decree of forfeiture.
 
 I.
 FACTS
 
 2
 On October 20, 1977, Special Agents Norman Jones and Frank Kelly of the United States Drug Enforcement Administration (DEA) arrested Ralph Tracy Eddinger, Jr. and Ronald Lopez for, inter alia, possession of cocaine, a controlled substance. Concurrent with the arrest, agents Jones and Kelly seized both the cocaine and Eddinger's 1971 BMW sedan under authority of 21 U.S.C. § 881(a). The arrest and seizure were the culmination of a series of negotiations common in such matters between agent Jones, who was working in an undercover capacity, and Eddinger and Lopez, whereby Jones agreed to purchase an ounce of cocaine from them for $1750. Agent Kelly was not involved in the negotiations, but acted as a surveillance agent throughout, observing Eddinger and Lopez arrive at the location of sale in Eddinger's BMW. The BMW was seized pursuant to 21 U.S.C. § 881(a)(4) for having been used to transport or facilitate the transportation or sale of the cocaine, a controlled substance, in violation of 21 U.S.C. § 841(a)(1).
 
 
 3
 At the time of seizure, agent Kelly informed Eddinger that his vehicle had been seized for transporting a controlled substance in violation of federal law, that procedures existed which he could utilize to seek release of the car, and that he should contact a local attorney or the United States Attorney if he wished to seek the vehicle's release. Eleven days later, the DEA mailed Eddinger a formal notice of seizure and his right to petition for remission. The notice was sent by certified mail, return receipt requested, to the post office box listed as Eddinger's address on his certificate of registration. The notice was received two days thereafter and signed for by an individual who checked the box marked "Authorized Agent." Eddinger was in jail at the time, and testified that he never received the notice.
 
 
 4
 On January 4, 1978, two and one-half months after the arrest and seizure, the United States filed a complaint for forfeiture against the 1971 BMW pursuant to 19 U.S.C. § 1604. The next day the United States served a warrant for arrest of the vehicle in rem on the DEA, and personally served the appellant in jail with a summons and complaint for forfeiture. The appellant, having pleaded guilty to conspiracy to distribute cocaine, remained in custody from the time of his arrest until September 11, 1978, eight months after the forfeiture complaint was filed. A judgment and decree of forfeiture in favor of the United States was entered on March 29, 1979, after somewhat lengthy proceedings in which appellant's claims were litigated.
 
 II.
 PROBABLE CAUSE HEARING CONTENTION
 
 5
 We shall address first the appellant's contention that he was entitled under the Constitution to a prompt probable cause hearing for seizure of his automobile. Because "due process is flexible and calls for such procedural protections as the particular situation demands," Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972), we should begin by analyzing that process to which Congress has considered owners of vehicles seized for violation of federal narcotics law to be entitled.
 
 
 6
 Forfeiture proceedings arising under 21 U.S.C. § 881 are governed by the same statutory provisions as apply to customs forfeitures. 21 U.S.C. § 881(d). Those provisions are set forth in Title 19 of the United States Code, sections 1602-21. At the time of seizure the particularly pertinent sections were as follows:[1] Section 1602 imposed on the seizing officer a duty to report the seizure immediately to the appropriate DEA official; section 1603 required the DEA official to report the seizure promptly to the appropriate United States Attorney for prosecution of the forfeiture and to include in that report a statement of all facts relevant to the seizure; and section 1604 required the United States Attorney immediately upon receipt of that report to inquire into the facts of the case and the laws applicable thereto to determine "if it appears probable that ... forfeiture has been incurred," and to institute proceedings "forthwith," unless, upon inquiry and examination, he decided "that such proceedings cannot probably be sustained or that the ends of public justice do not require that they should be instituted or prosecuted ...." Section 1610 assured the owner of any vehicle of value greater than $2,500 the right to judicial review of the forfeiture, and any person interested in the vehicle could in addition, petition for administrative remission or mitigation of the forfeiture in accordance with section 1618.
 
 
 7
 The pervasive statutory scheme of which these sections are a part evidences substantial concern on the part of Congress with respect to what process is due owners of vehicles seized under the narcotics laws. Great weight must be given to its judgment. See Mathews v. Eldridge, 424 U.S. 319, 349, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976). As applied herein, the procedures prescribed by Congress not only afforded the appellant the right to petition for remission of the forfeiture, but further assured him the right to judicial review of the forfeiture.
 
 
 8
 Appellant argues that despite these protections, he was entitled under the Due Process Clauses of the Fifth Amendment to an additional hearing for probable cause within 72 hours of the government's seizure of his automobile. We disagree. The cases upon which the appellant relies, Stypmann v. City and County of San Francisco, 557 F.2d 1338 (9th Cir. 1977), and Lee v. Thornton, 538 F.2d 27 (2d Cir. 1976), present far more compelling situations for immediate post-seizure proceedings than that presented here. In Stypmann, we addressed the constitutionality of a California statute which authorized removal of privately owned vehicles from the street without prior notice or opportunity for a hearing, and which established a possessory lien for towage and storage fees without a hearing before or after the lien attached. Recognizing that the statute at issue "establishe(d) no procedure to assure reliability of the determination that the seizure and detention are justified" and "afford(ed) virtually no protection to the vehicle owner," we held that owners of vehicles towed under the statute are entitled to a prompt post-seizure hearing, and that a five-day delay under such circumstances is "clearly excessive." 557 F.2d at 1343-44. The instant case presents a very different situation. Not only is the offense that precipitated the official seizure more serious, but also the applicable procedures here far better protected the appellant's rights. Thus, the duty of the United States Attorney to investigate and make a determination, independent of the seizing agency, as to whether forfeiture was warranted served to safeguard against an erroneous seizure, and the judicial hearing to which the appellant was entitled served to assure the propriety of the forfeiture. Lee v. Thornton, in which the Second Circuit held that owners of vehicles seized at remote border points and subject to summary forfeiture are entitled to a probable cause hearing, upon request, within 72 hours of seizure, is also distinguishable. There the claimants were afforded neither the independent evaluation by the United States Attorney that prosecution was warranted, nor judicial review to determine whether the forfeiture was just.
 
 
 9
 Balancing the risk of an erroneous deprivation of the private interest against the probable costs and delays of the requested additional procedural safeguard,[2] we hold that the appellant was not denied due process of law by not being afforded a probable cause hearing within 72 hours of seizure of his car. The risk of an erroneous seizure was minimized by the duty of the United States Attorney immediately after notification of the seizure to investigate the facts and laws and independently to determine whether initiation of forfeiture proceedings was warranted. Moreover, we cannot ignore the fact that the seizure at issue occurred pursuant to laws designed to curb the transportation and sale of narcotics. Seizure and forfeiture of vehicles for violation of narcotics laws foster the public interest. Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 679, 686-87, 94 S.Ct. 2080, 2089, 2093-2094, 40 L.Ed.2d 452 (1974). The interest of the appellant in the uninterrupted use of his vehicle is not so compelling as to outweigh the substantial interest of the government in controlling the narcotics trade without being hampered by costly and substantially redundant administrative burdens. Accordingly, we hold that the procedures established by 19 U.S.C. §§ 1602-04 comply with the requirements of the Fifth Amendment.
 
 III.
 THE TWO AND ONE-HALF MONTHS LAPSE CONTENTION
 
 10
 Appellant asserts that he was also denied Fifth Amendment due process by the lapse of two and one-half months between seizure of his car and initiation of the judicial forfeiture action. Due process, however, requires no more than that forfeiture proceedings be commenced without unreasonable delay, Ivers v. United States, 581 F.2d 1362 (9th Cir.1978); there is no requirement that they be commenced within a specific time limit. United States v. One 1972 Mercedes-Benz 250, 545 F.2d 1233 (9th Cir.1976). Examination of forfeiture case law makes it clear that the length of the delay in the instant case was not per se unreasonable. See, e. g., Ivers v. United States, 581 F.2d 1362 (9th Cir.1978) (seventeen-month delay not unreasonable); United States v. One 1973 Buick Riviera, 560 F.2d 897 (8th Cir.1977) (five-month delay not unreasonable); United States v. One (1) 1972 Wood, 19 Foot Custom Boat, 501 F.2d 1327 (5th Cir.1974) (ten-month delay not unreasonable). Nor was it unreasonable under the circumstances of this case. Section 1604 required that, prior to the initiation of a forfeiture proceeding, the United States Attorney satisfy himself that such a proceeding could probably be sustained, and that the ends of justice required that the proceeding be instituted and prosecuted. To do so the attorney had to inquire into both the facts and law to determine if there was a forfeiture. The district court found that in this case the United States Attorney, to conduct his inquiry properly, had to wait for confirmation from the government laboratory that the seized contraband was in fact cocaine. That the verification process took two months does not compel the conclusion that the appellant has been denied his constitutional rights. The United States Attorney instituted the judicial forfeiture proceeding twelve days following laboratory confirmation. The government's procedure cannot be said to have resulted in unreasonable delay.
 
 
 11
 The appellant asserts that he was prejudiced by the government's two and one-half month delay because his automobile was a wasting asset. Admittedly the fact that seized property may decline in value while in government custody underscores the need for promptness. See United States v. One 1970 Ford Pickup, 564 F.2d 864, 866 (9th Cir.1977). It is not, however, the controlling factor in the determination of reasonableness. Forfeiture constitutes an extraordinary situation. Because of the public's interest in the enforcement of drug laws, private property used in violation of the narcotics laws may be seized by the government without the property owner being afforded preseizure notice and an opportunity to be heard. Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). It is the lack of preseizure notice and hearing that compels forfeiture proceedings be commenced with reasonable promptness. Ivers v. United States, 581 F.2d 1362, 1368 (9th Cir.1978). The fact that the property may decline in value while in government custody is, at best, only faintly germane to the issue of reasonableness. Here the delay was not unreasonable.
 
 IV.
 THE INADEQUATE NOTICE CONTENTION
 
 12
 The appellant asserts that he was given inadequate notice of his right to petition for remission or mitigation of forfeiture. We find no merit in this assertion. At the time of appellant's arrest, the arresting officer advised the appellant that his car had been seized for violation of federal narcotics law, that procedures existed which the appellant could utilize to seek release of the vehicle, and that the appellant should contact a private attorney or the United States Attorney if he wished to do so. Moreover, eleven days following seizure the government mailed appellant written notice of the seizure and his right to petition for remission. The notice contained the date and place of seizure, a description of the property seized, authority for the seizure, a statement that the appellant had a right to petition for remission, the place to file such a petition, a copy of the relevant forfeiture regulations, and a statement that the petition must be filed within thirty days in order to be timely. This notice clearly complies with minimum due process standards. See United States v. Eight (8) Rhodesian Stone Statues, 449 F.Supp. 193 (C.D.Cal.1978).
 
 
 13
 The appellant contends that this notice was nonetheless inadequate because, although the government knew that the appellant was incarcerated, it sent the notice to appellant's address of registration rather than to him in jail. The appellant reads Robinson v. Hanrahan, 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972), to require that any notice sent to a post office box is insufficient when the government knows that the property owner is in jail. We do not read Robinson that broadly. It is distinguishable from the present case in two significant respects. First, the notice at issue in Robinson was notice of the pending judicial forfeiture proceedings at which finality of the forfeiture could be accorded, whereas here the notice pertains to an extra-judicial remedy designed to afford administrative relief to innocent owners, lien holders, and others who can establish a lack of willful negligence or intention to violate the law. 19 U.S.C. § 1618. Second, the claimant in Robinson was permanently deprived of his property without a single opportunity to contest the forfeiture. He received no notice of the forfeiture proceeding until his release from custody nearly two months after an ex parte hearing occurred at which forfeiture was ordered. Here the appellant received personal notice of the judicial forfeiture action filed in district court through service of a summons and complaint by the United States Marshal, and was fully afforded an opportunity to contest the forfeiture prior to its being declared final. The requirements of Robinson were met. Appellant was provided "notice reasonably calculated, under all the circumstances, to apprise (him) of the pendency of the action and afford (him) an opportunity to present (his) objections." 409 U.S. at 40, 93 S.Ct. at 31.
 
 V.
 THE LACK OF PROBABLE CAUSE CONTENTION
 
 14
 The appellant lastly asserts that the government failed to show probable cause for the seizure. The district court resolved sharply conflicting testimony to find that the appellant drove his vehicle to a rendezvous point with undercover government agents, carrying his accomplice Lopez as a passenger. The court further found that after a short period of negotiation at the rendezvous point, the appellant and Lopez were arrested, with cocaine seized from Lopez's possession. The court's finding that the appellant's vehicle was thus used to facilitate the transportation of cocaine is sufficient to establish the probable cause necessary to sustain the forfeiture. That finding was not clearly erroneous. See United States v. One 1974 Cadillac Eldorado Sedan, 548 F.2d 421 (2d Cir.1977) United States v. One 1970 Pontiac GTO, 2-Door Hardtop, 529 F.2d 65 (9th Cir.1976).
 
 
 15
 Affirmed.
 
 
 
 *
 Honorable Leland C. Nielsen, United States District Judge for the Southern District of California, sitting by designation
 
 
 [1]
 Three of the sections have since been amended. The requirement that report of the seizure be made "promptly" to the appropriate United States Attorney was added to section 1603 in 1978. Prior to that, this court inferred the requirement. See United States v. One 1970 Ford Pickup, 564 F.2d 864, 866 (9th Cir.1977). Also in 1978, the value required by section 1610 for a judicial forfeiture was raised to $10,000. Because the value of appellant's vehicle was greater than the $2,500 statutory base at the time of the seizure, appellant was entitled to a judicial forfeiture. In 1980, the section 1604 duty to independently determine whether forfeiture is warranted was shifted from the United States Attorney to the Attorney General
 
 
 [2]
 See Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)