**UNITED STATES of America, Appellant,**

v.

**TWO HUNDRED NINETY-FIVE IVORY CARVINGS and Marvin Segal, Appellees.**

**No. 81–3260.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 11, 1982.

Decided Oct. 6, 1982.

---

**6.** See Footnote 3.

David B. Smith, Washington, D. C., for appellant.

Michael D. Hunsinger, Seattle, Wash., argued for appellees; Ronald G. Neubauer, Seattle, Wash., on brief.

Before FARRIS and CANBY, Circuit Judges, and CURTIS *, District Judge.

CANBY, Circuit Judge:

On September 11, 1977, Marvin Segal returned from the Orient with 295 ivory carvings, entering the United States at the Seattle-Tacoma International Airport. He listed only 12 of the 295 carvings in his Customs declaration and he undervalued the 12 he declared. Upon discovering the carvings and the related sales invoices, the United States Customs Service seized all of the carvings. Eighteen months later, on March 26, 1979, Customs referred the case to the United States Attorney for the institution of judicial forfeiture proceedings. On April 20, 1979, the United States filed a complaint in the United States Western District Court for the District of Washington, seeking forfeiture of the carvings, pursuant to 19 U.S.C. §§ 1497 and 1592, and a civil penalty equal to the value of the carvings not declared pursuant to 19 U.S.C. 1497.

The government filed a motion for summary judgment. Segal filed a cross-motion for summary judgment and opposition to the government's motion, asserting that the government's delay in instituting the forfeiture action violated due process as well as the statutory duty, pursuant to 19 U.S.C. § 1603, to refer cases involving customs seizures to the United States Attorney

promptly. The district court granted Segal's motion for summary judgment and denied the government's motion. The government appeals. We hold that the government's delay in referring the case to the United States Attorney for prompt institution of judicial forfeiture proceedings violated Segal's right to a prompt post-seizure adjudication of the forfeiture. Segal was, therefore, entitled to a dismissal of the forfeiture action and the return of the illegally detained property. The government's tardiness in bringing the forfeiture action does not, however, require the dismissal of the second cause of action for a civil penalty pursuant to § 1497. We therefore remand for further proceedings on that claim.

The government accounts for the nineteen months between seizure and institution of this judicial action as follows. Customs seized the 295 ivory carvings from Segal on September 11, 1977. More than a month after the seizure, Customs sent Segal a notice of seizure, advising him of his right to petition for administrative relief within 60 days. At the end of the 60 days, on December 24, 1977, Segal petitioned for administrative relief. By August 3, 1978, eight months after relief was requested, the investigation was completed. Eight days later, the Customs Office of Fines, Penalties, and Forfeitures referred the case to Customs Regional Counsel, requesting that it be referred to the United States Attorney for judicial forfeiture. A month later, on September 15, 1978, Customs advised Segal that relief was denied and told him that the case would be referred to the United States Attorney. The referral, however, was not made. Instead, Customs considered whether to attempt a "summary forfeiture" before referring the matter to the United States Attorney.[1] This decision took five

---

* The Honorable Jesse W. Curtis, United States District Judge for the Central District of California, sitting by designation.

1. Sections 1607–1609 of U.S.C. Title 19 permit summary forfeiture and sale of seized goods valued at less than $10,000. Section 1607 provides for notice, by publication, of the seizure and the government's intent to seek a forfei-

ture. To avoid summary forfeiture a claimant must post a $250 bond and file a claim within 20 days from the first publication of notice. Once a claim has been filed and bond has been posted, Customs refers the matter to the U. S.

months. On February 26, 1979, Customs began the summary forfeiture process and so notified Segal. The summary process required Segal to post bond in order to contest the forfeiture. He did so on March 19, 1979, and on March 26, 1979, Customs finally referred the case to the United States Attorney. A month later, on April 20, 1979, the complaint was filed.

A default judgment was entered on October 10, 1979, but was vacated on June 18, 1980.[2] The government moved for summary judgment on December 1, 1980. Segal filed his cross-motion for summary judgment on December 24, 1980, which was granted on February 7, 1981.

## I.

The basic issue on appeal is the effect of the government's delay in instituting this judicial forfeiture action. Since its summary seizure and during the entire period of the delay, Segal has been deprived of his property without an impartial hearing concerning the seizure. Although the government must usually give notice and a hearing *prior* to taking property, seizure of property for forfeiture to the government is viewed as an "extraordinary situation" in which the notice and hearing may be postponed because (1) seizure is "directly necessary to secure an important governmental or general public interest" (2) "there is a 'special need for very prompt action,'" and (3) "seizure is initiated by 'a government official responsible for determining, under the standards of a narrowly drawn statute, that it [is] necessary and justified in the particular instance.'" *Ivers v. United States,* 581 F.2d 1362, 1368 (9th Cir. 1978); quoting *Fuentes v. Shevin,* 407 U.S. 67, 91, 92 S.Ct. 1983, 1999, 32 L.Ed.2d 556 (1972), and *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 678–80, 94 S.Ct. 2080, 2089–90, 40 L.Ed.2d 452 (1974). Even though the government may be relieved of the requirement of a pre-seizure hearing, due process requires that judicial proceedings be commenced with "some promptitude." *Ivers, id.* We recently stated the requirement for promptness as follows:

Forfeiture actions must be brought promptly. See *Ivers v. United States,* 581 F.2d 1362, 1368 (9th Cir. 1978); *United States v. One 1970 Ford Pickup Truck,* 564 F.2d 864 (9th Cir. 1977). Because customs seizures infringe upon the right of private ownership of property, any delay in instituting forfeiture proceedings must be justified. This requirement as-

---

Attorney for institution of judicial forfeiture proceedings. 19 U.S.C. § 1608. Seized property valued at more than $10,000 must be referred to the United States Attorney for judicial proceedings; the claimant need not post bond or file a claim with Customs. 19 U.S.C. § 1610. The value of the property subject to the summary procedure was increased from $2,500 to $10,000 on October 3, 1978. Pub.L. 95-410, § 111(a), 92 Stat. 897. Customs would have been saved the trouble of deciding whether the change applied to this case had it acted promptly in referring this case to the U. S. Attorney. If it had referred the case promptly upon concluding its investigation of the administrative·petition the referral would have been made several months prior to the October 1978 amendment.

2. The government seems to argue that Segal waived his right to object to the government's delay in instituting the action because Segal did not answer the complaint promptly once it was filed. Segal's attorney had instructed Segal not to answer the complaint until it had been personally served because in his legal opinion personal service was required. No answer having been filed, the Government moved for a default judgment without notifying Segal or his attorney. We need not decide whether Segal's failure to answer what he believed to be an improperly served complaint should prejudice his contention that the Government's 18-month delay in filing the complaint had deprived him of his property without due process. The government's opposition to Segal's motion for summary judgment makes no argument concerning either party's conduct after the complaint was filed, and we find no indication in the record that this argument was presented to the district court. We will ordinarily not overturn a summary judgment on a ground that was not plainly disclosed as a genuine issue to the trial court. *Komatsu LTD v. States S.S. Co.,* 674 F.2d 806, 812 (9th Cir. 1982); *California State Employees' Credit Union No. 6 v. Nelson,* 561 F.2d 1342, 1348 (9th Cir. 1977); *Rothman v. Hospital Service of Southern California,* 510 F.2d 956, 960 (9th Cir. 1975); *De Bardeleben v. Cummings,* 453 F.2d 320, 324–25 (5th Cir. 1972).

sures that the citizen will be able to protest an erroneous seizure at a meaningful time. By thus limiting the potentiality for wrongful deprivation we protect property rights to the fullest extent possible, given the competing need to enforce customs laws.

*United States v. Eight Thousand Eight Hundred Fifty Dollars (Eight Thousand),* 645 F.2d 836, 838 (9th Cir. 1981) *cert. granted,* 455 U.S. 1015, 102 S.Ct. 1708, 72 L.Ed.2d 132 (1982).

■ The statutes governing post-seizure procedures reflect the special due process concerns involved in a summary seizure of property. Section 1602 of U.S.C. Title 19 requires the seizing officer to report the seizure to the appropriate customs officer immediately. Section 1603 requires the customs officer to report the seizure to the appropriate United States Attorney for prosecution of the forfeiture. Section 1604 requires the United States Attorney to inquire into the facts "immediately" and "if it appears probable that . . . forfeiture has been incurred," he is "forthwith" to institute proceedings, "without delay, . . . unless upon inquiry and examination, [he] decides that such proceedings cannot probably be sustained or that the ends of public justice do not require that they should be instituted or prosecuted. . . ." While Section 1603, prior to its amendment in 1978, did not contain any term such as "immediate" or "forthwith," or "without delay," a requirement of prompt referral has been inferred in order to avoid a finding of facial unconstitutionality. *United States v. One 1971 BMW 4-Door Sedan,* 652 F.2d 817, 819 n. 1 (9th Cir. 1981); *United States v. One 1970 Ford Pickup,* 564 F.2d 864, 866 (9th Cir. 1977); *Sarkisian v. United States,* 472 F.2d 468, 471 (10th Cir.), *cert. denied,* 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219 (1973); *cf. Ivers v. United States,* 581 F.2d 1362, 1368 (9th Cir. 1978) (19 U.S.C. § 1102 construed to require prompt institution of forfeiture proceedings). The particular stage at which delay in the institution of proceedings occurs is immaterial, since the effect of the delay on the property owner's right to a prompt hearing is the same.

## II.

■ The government must therefore justify its delay. It asserts that the sequence of events recited above justified the 18-month lapse of time between its summary seizure of the carvings and the post-seizure judicial hearing. It argues that Segal waived his right to a prompt post-seizure hearing by petitioning for administrative relief under 19 U.S.C. § 1618 and by never thereafter requesting the institution of judicial forfeiture proceedings. In *Ivers,* however, this court ruled that the "mere filing of a petition for remission . . . does not justify a delay in seeking a judicial determination of forfeiture." *Id.,* 581 F.2d at 1372; *see Eight Thousand,* 645 F.2d at 838. The government nevertheless prevailed in *Ivers* because, in the early stages of his efforts to regain possession of his property administratively, the claimant had specifically requested the government to postpone instituting judicial proceedings. Under those circumstances the government was entitled to assume that the claimant concurred in the delay, absent some subsequent indication that his earlier request had been withdrawn.

■ Unlike the claimant in *Ivers,* Segal has never expressly requested postponement of judicial forfeiture proceedings. The Government contends, however, that Segal implicitly agreed to an 18-month delay by seeking administrative relief and failing to request the institution of judicial forfeiture proceedings. We cannot agree. By petitioning for administrative relief, Segal clearly and unequivocally objected to the government's detention of his property. His petition cannot be viewed as signifying an agreement to or request for indefinite postponement of judicial proceedings. We recognize that administrative relief proceedings sometimes result in the return of seized property in a very short period of time. In such cases, to require the concurrent institution of judicial forfeiture proceedings would be time-consuming and costly to both the government and the claimant.

A brief delay in the institution of a forfeiture action to await the outcome of a prompt and efficient investigation and review of the matter by the seizing agency would not constitute an unreasonable delay. *Cf. Von Neumann v. United States,* 660 F.2d 1319, 1324 (9th Cir. 1981) (requiring administrative relief proceedings to be prompt). However, the government's delay here was far from brief. We cannot countenance prolonged, indefinite postponement of the constitutionally required independent judicial hearing, absent the claimant's express agreement.

Moreover, even if Segal's administrative relief petition had been investigated, considered, and denied expeditiously, the government's position would not be improved. After it denied administrative relief another five months passed before Customs, the seizing agency, referred the matter to the United States Attorney's office for the first independent investigation and determination as to whether forfeiture was warranted. *Cf. United States v. One 1971 BMW 4-Door Sedan,* 652 F.2d 817, 820 (9th Cir. 1981) (holding that procedure requiring prompt referral to United States Attorney partially satisfies due process since the United States Attorney evaluates facts surrounding seizure independently and declining to impose separate requirement of probable cause hearing within 72 hours). This further delay violates the statutory requirement that forfeiture matters be promptly referred, *see* 19 U.S.C. § 1603, as well as the related constitutional requirement of promptness.

### III.

■ The government urges that Segal must show economic prejudice as an element of his due process claim. It argues that ivory carvings do not decrease in value

with the passage of time, and that it may therefore deprive their owner of their use and enjoyment indefinitely before seeking the constitutionally required judicial determination of forfeiture. We rejected this argument in *Eight Thousand,* 645 F.2d at 838–39, as we must again here. *See also United States v. Eight (8) Rhodesian Stone Statues,* 449 F.Supp. 193, 205 (C.D.Cal.1978). To require a showing of prejudice is inconsistent with the constitutional basis of Segal's claim. He has been deprived of the use and enjoyment of his property for 18 months during which time the question of title has been in limbo. The exigencies involved in customs seizures cases which justify a limited exception to the requirement of a pre-seizure hearing do not endure that long. We will not now accept the government's attempt to minimize its violation of Segal's due process property rights.

■ In the same vein, the government argues that claimant had no defense other than the defense of delay, and that he was, therefore, not prejudiced.[3] The government contends that it could establish the facts necessary to uphold the forfeiture by reliance upon Segal's earlier plea of guilty to 18 U.S.C. § 1001.[4] The government points out that, although Segal did not admit the government's allegations of facts surrounding the seizure in his cross-motion for summary judgment and opposition to the government's motion for summary judgment, he has not asserted any contrary view of the facts. This contention of the government is wholly disposed of by our holding in *Eight Thousand* that no special showing of prejudice must be made. In *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the Supreme Court responded similarly to an analogous contention:

---

**3.** Since the government did not present this argument to the district court in response to the summary judgment motion, the district court had no opportunity to evaluate what Segal's other defenses might have been or whether the delay might have impaired those defenses.

**4.** On February 27, 1978, Segal had been criminally indicted in connection with the September 11 episode. He was charged with violating 18 U.S.C. §§ 542, 545 and 1001. On July 10, 1978, Segal pled guilty to willfully and knowingly making a false, fictitious, and fraudulent statement to Customs inspectors in violation of 18 U.S.C. § 1001. The other two counts were dismissed.

[A]ssuming that the appellants had fallen behind in their installment payments, and that they had no other valid defenses, that is immaterial here. The right to be heard does not depend upon an advance showing that one will surely prevail at the hearing. "To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense on the merits." ... It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, whatever the ultimate outcome of a hearing on the contractual right to continued possession and use of the goods.

*Id.* at 87, 92 S.Ct. at 1997 (footnotes omitted). Although several district courts and the Court of Appeals for the Eighth Circuit have accepted the government's "no other defense" argument, *United States v. Various Pieces of Semiconductor Manufacturing Equipment,* 649 F.2d 606 (8th Cir. 1981); *United States v. Thirty Six Thousand One Hundred and Twenty Five ($36,125.00) Dollars in United States Currency,* 510 F.Supp. 303 (E.D.La.1980), aff'd mem. 642 F.2d 1211 (5th Cir.), *cert. denied,* 454 U.S. 835, 102 S.Ct. 136, 70 L.Ed.2d 114 (1981); *United States v. One 1973 Ford LTD,* 409 F.Supp. 741 (D.Nev.1976), we do not.

## IV.

■ The government argues that despite its unjustified and unreasonable delay in instituting forfeiture proceedings, dismissal of an otherwise valid forfeiture claim is inappropriate because it is "disproportionate to the harm suffered" by the property owner. But in light of the policies underlying the Fifth Amendment right to a prompt hearing when property has been seized, we do not view dismissal of the forfeiture action as an improper remedy. Severe remedies are not unique in the application of constitutional standards. *Cf. Strunk v. United States,* 412 U.S. 434, 439–440, 93 S.Ct. 2260, 2263, 37 L.Ed.2d 56 (1972) (dismissal appropriate sanction for violation of

Sixth Amendment right to a speedy trial). Courts have routinely granted dismissal of federal statutory forfeiture actions where the government has delayed too long in seeking a judicial determination of its right to have summarily seized and retained an owner's property. *See e.g. Eight Thousand, supra; United States v. One 1970 Ford Pickup,* 564 F.2d 864 (9th Cir. 1977); *Lee v. Thornton,* 538 F.2d 27 (2d Cir. 1976); *State Marine Lines v. Schultz,* 498 F.2d 1146 (4th Cir. 1974); *Sarkisian v. United States,* 472 F.2d 468 (10th Cir. 1972), *cert. denied,* 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219 (1973); *United States v. Eight (8) Rhodesian Stone Statues,* 449 F.Supp. 193 (C.D.Cal. 1978); *United States v. One 1971 Opel G.T.,* 360 F.Supp. 638 (C.D.Cal.1973). Thus, we view reasonable promptness as an implied statutory condition to the institution of a forfeiture action. *Ivers v. United States,* 581 F.2d 1362, 1368 (9th Cir. 1978). The government has lost its right to obtain title, regardless of the merits its action might once have had. To require reasonable promptness in the administration of a federal forfeiture statute is not a new or startling concept. In *United States v. Thirty-Seven Photographs,* 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971), to satisfy first amendment concerns, the Supreme Court imposed a requirement of prompt judicial action upon a customs statute that permitted summary seizure and forfeiture of obscene materials. Here, the requirement we once again impose is one tailored to meet the more flexible due process standards of the fifth amendment. We require only reasonable promptness. *United States v. One 1971 BMW 4-Door Sedan,* 652 F.2d 817, 821 (9th Cir. 1981).

■ We cannot lose sight of the magnitude of the interest we are seeking to protect. The claimant's property has been seized. He has been completely deprived of its use and enjoyment without an impartial hearing. Normally due process requires that some form of notice and impartial hearing be given a property owner before he is dispossessed of his property, even temporarily, *Fuentes v. Shevin,* 407 U.S. at 85,

92 S.Ct. at 1996 (1972); *Ivers,* 581 F.2d at 1367–68, but seizure of property for forfeiture to the Government is an "extraordinary situation" justifying postponement of the required notice and hearing. *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 677, 94 S.Ct. 2080, 2088, 40 L.Ed.2d 452 (1974); *Ivers,* 581 F.2d at 1368; *see Fuentes v. Shevin,* 407 U.S. at 90–92, 92 S.Ct. at 1999–2000. Summary seizure serves a public rather than a private interest that might be thwarted if pre-seizure notice is given, and seizure is initiated by governmental officials under standards of a narrowly drafted statute. *Calero-Toledo, id.* 416 U.S. at 679, 94 S.Ct. at 2089. However, "[w]hile relieved of the necessity of a pre-seizure hearing, governmental officials in this area are not endowed with an unfettered discretion in choosing when to institute the requisite judicial proceedings." *Ivers,* 581 F.2d at 1368.

> The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decisionmaking when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property.... So viewed, the prohibition against the deprivation of property without due process of law reflects the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference. See *Lynch v. Household Finance Corp.,* 405 U.S. 538, 552 [92 S.Ct. 1113, 1122, 31 L.Ed.2d 424].

*Fuentes v. Shevin,* 407 U.S. at 80–81, 92 S.Ct. at 1994. In the context of governmental seizures pursuant to narrowly drawn forfeiture statutes, the constitutionally required hearing may be postponed, but it cannot be postponed beyond the time reasonably required for the seizing agency expeditiously to determine whether it will return the property voluntarily or, in the alternative, keep the property and establish its right to do so.

The government argues that the claimant can be adequately compensated by a later hearing or a damage action. *Cf. Seguin v. Eide,* 645 F.2d 804, 810–811 (9th Cir. 1981) (*Bivens* type action against district director of Customs), *cert. petition filed,* 50 U.S.L.W. 3550 (No. 81–1249) (U. S. Jan. 4, 1980). In *Fuentes* the Supreme Court rejected a similar contention:

> If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented. At a later hearing, an individual's possessions can be returned to him if they were unfairly or mistakenly taken in the first place. Damages may even be awarded to him for the wrongful deprivation. But no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred. "This Court has not ... embraced the general proposition that a wrong may be done if it can be undone." *Stanley v. Illinois,* 406 U.S. 645, 647 [92 S.Ct. 1208, 1210, 31 L.Ed.2d 551].

*Fuentes v. Shevin,* 407 U.S. at 81–82, 92 S.Ct. at 1994–95. Here, although the summary seizure did not itself violate due process, continued deprivation without a hearing did. Like the Supreme Court in *Fuentes,* we find the existence of alternative proceedings an inadequate rationale for exempting the federal forfeiture statutes from the fifth amendment requirement that summary seizure of property be followed by a reasonably prompt impartial hearing.

Similarly, we cannot accept the government's argument that the claimant should be required to file a separate action to contest the unlawful detention in order to assert his right to a prompt impartial hearing. "A claimant ought not to be required to spend his own money to force the government to take action which the government is bound by law to take promptly." *United States v. Eight (8) Rhodesian Stone Statues,* 449 F.Supp. 193, 206

(C.D.Cal.1978) (Hill, J.). Until the government actually institutes the forfeiture action, its intentions toward the property are at best ambiguous. Even if Customs has declared its final decision, the U. S. Attorney may determine that the case should be dropped and the property returned. To require the claimant to institute his own judicial action to force the prompt institution of a forfeiture action, when it is not clear how long the government actually intends to keep the property, is particularly unfair.

Here, the forfeiture action arose out of an uncomplicated set of facts. Segal allegedly failed to declare the carvings when he entered the country. Forfeiture proceedings are normally guided by civil standards of proof, since forfeiture is generally viewed as being a remedial civil sanction, not a criminal one. *One Lot Emerald Cut Stones and One Ring v. United States,* 409 U.S. 232, 237, 93 S.Ct. 489, 493, 34 L.Ed.2d 438 (1972); *United States v. $31,697.59 Cash,* 665 F.2d 903, 905 (9th Cir. 1982). We have no doubt that an action based upon these facts could have been filed with reasonable promptness had the government acted diligently. *See May v. United States,* 519 F.Supp. 649, 652 (S.D. Ohio 1981). If the forfeiture action is to serve as the first post-seizure impartial hearing, reasonable promptness is constitutionally required.

Moreover, civil forfeiture proceedings are not the exclusive or even principal means available for protecting society's interests. To require the government to return property it has seized and held in violation of a property owner's right to a reasonably prompt post-seizure hearing does not deprive the government of any other sanctions, criminal or civil, that may be available for protecting society's interests and does not unnecessarily infringe on society's competing interest in the administration of criminal justice.

The government has raised one other issue which we believe requires a remand for further proceedings. Its second cause of action sought a civil penalty under 19 U.S.C. § 1497 for Segal's conduct. Judicial imposition of a civil penalty does not implicate the special due process concerns of summary seizure. Therefore, we reverse in part, remanding for further proceedings concerning the propriety of assessing a civil penalty.

Affirmed in part; reversed in part and remanded for further proceedings.